418 Mass. 452 (1994)
636 N.E.2d 1326
JESUS MADERA
vs.
SECRETARY OF THE EXECUTIVE OFFICE OF COMMUNITIES AND DEVELOPMENT & another.[1]
Supreme Judicial Court of Massachusetts, Hampden.
April 6, 1994.
July 22, 1994.
Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.
*453 Pierce O. Cray, Assistant Attorney General, for Secretary of the Executive Office of Communities and Development.
J. Paterson Rae for the plaintiff.
James M. McCreight, for Massachusetts Coalition for the Homeless, amicus curiae, submitted a brief.
GREANEY, J.
The defendant, the Secretary of the Executive Office of Communities and Development (EOCD), has appealed from a partial judgment entered in the Housing Court for Hampden County which granted summary judgment pursuant to Mass. R. Civ. P. 56 (a), 365 Mass. 824 (1974), to the plaintiff, Jesus Madera, who had been denied public housing by the Springfield Housing Authority (authority).[2] The judgment ordered the EOCD to treat the plaintiff's administrative appeal from the authority's denial of his application for public housing as requiring a formal adjudicatory proceeding under G.L.c. 30A, §§ 1 (1), 10, and 11 (1992 ed.), of the State Administrative Procedure Act. We transferred the appeal to this court on our own motion principally to decide the issue of the plaintiff's right to an adjudicatory hearing. We conclude that § 1 (1) of G.L.c. 30A entitled the plaintiff to an adjudicatory hearing before the EOCD. We also conclude, however, that other relief ordered by the judge sweeps too broadly, and we order vacated that part of the judgment which addresses the question of communications between the EOCD and local housing authorities.
No argument is made that the case is inappropriate for disposition by summary judgment. The undisputed factual background is as follows. In August, 1988, the plaintiff, who suffers from schizophrenia, filed an application for public *454 housing with the authority. The plaintiff was put on a waiting list and, since he had other housing, was not granted preference.
In November, 1990, the Springfield police arrested and charged the plaintiff with arson after a small fire developed in the apartment building where he had been living. Following a jury trial, the plaintiff was acquitted on January 17, 1991. The plaintiff had been in custody pending trial. When he was released, he discovered that his apartment had been rented to another person.
Now homeless, the plaintiff renewed his request for public housing. In response, the authority, by a letter dated April 16, 1991, denied the plaintiff's renewed application, indicating that (1) the plaintiff had a tendency to destroy property which "would substantially interfere with the health, safety, security and peaceful enjoyment of other tenants and would adversely affect the physical environment of the resident community"; and (2) the plaintiff was "capable of setting fires" during periods in which he was not quiet and well behaved. Thereafter, pursuant to 760 Code Mass. Regs. § 5.12 (1) (1989), as in effect prior to July 30, 1993,[3] the plaintiff requested an informal conference with the authority to contest test this decision.
*455 On June 5, 1991, the authority held a tape-recorded hearing at which the plaintiff claimed that he had not set fire to his apartment building and submitted documentation of his acquittal on the arson charge. The plaintiff also submitted a letter from a psychiatrist who had been treating him for schizophrenia, and a letter from a supervisor of a day treatment program which attested to the plaintiff's regular attendance and participation.
After this hearing, the authority declined to approve the plaintiff's renewed application. In its decision, the authority made reference to a recent criminal charge against the plaintiff for breach of the peace (while armed with brass knuckles) for which the plaintiff had received a suspended sentence. The plaintiff appealed the authority's decision to the EOCD pursuant to 760 Code Mass. Regs. § 5.12 (2) and (3) (1989).[4]
After the authority failed to submit sufficient documentation, the EOCD chief counsel's legal secretary made contact with the authority's tenant selection supervisor and requested additional information associated with the plaintiff's application. Thereafter, the authority forwarded to the EOCD the plaintiff's application for housing. It also submitted (1) an arson squad investigation report concerning the arson case brought against the plaintiff; (2) two witness statements implicating the plaintiff in the apartment-house fire; and (3) an applicant history sheet containing notes of conversations about the plaintiff with various unnamed individuals. The authority *456 also provided to the EOCD a tape recording of the informal conference of June 5, 1991, at which the plaintiff had been present. The authority did not provide the plaintiff with copies of its submissions. On September 18, 1991, counsel for the plaintiff, by letter, advised the EOCD that he had not received copies of any of the materials submitted by the authority other than a copy of a letter dated July 25, 1991. EOCD then provided the plaintiff with a copy of the plaintiff's application for housing.
By decision dated December 6, 1991, the EOCD, after accepting the plaintiff's argument that he had not been provided with the opportunity to rebut the breach of the peace charge which had been referred to in the authority's decision, remanded the matter to the authority for another hearing. After further hearing, the authority again denied the plaintiff's application.
The plaintiff's action in the Housing Court against both the authority and EOCD, asserted, insofar as the EOCD is concerned, that the agency had (1) improperly failed to provide him with an adjudicatory hearing under G.L.c. 30A, and (2) engaged in improper ex parte communications with the authority during the course of agency review in violation of 760 Code Mass. Regs. § 5.12 (3) (1989).[5] See note 4, supra.
Cross motions for summary judgment were filed on these issues under Mass. R. Civ. P. 56 (a) and (b). A judge of the Housing Court granted the plaintiff's motion and denied the motion of the EOCD. The judge concluded that the plaintiff was entitled to an adjudicatory hearing under G.L.c. 30A on his appeal of the authority's decision, and that the authority had engaged in improper ex parte contacts with the EOCD. Declarations were made "that [the EOCD] is obligated *457 to provide hearings in the form required by G.L.c. 30A, §§ 10 & 11, on appeals from decisions of local housing authorities denying eligibility for housing," and prescribing how an authority and the EOCD can communicate when a review of a housing application is pending.[6] Orders enforcing these declarations were embodied in the partial judgment before us for review.
1. The applicability of G.L.c. 30A. At the time of the plaintiff's application, the EOCD considered a denial of eligibility for public housing under 760 Code Mass. Regs. § 5.12 (3) (1989), on the basis of "written argument and documentation," and "review[ed] the decision of [an authority] for its compliance with applicable statutes and regulations."[7] The plaintiff maintained that the EOCD was required, by reason of his possession of a constitutional right, to provide him with an adjudicatory hearing. The judge agreed, concluding that applicants for State-funded public housing have a constitutionally protected interest in their eligibility for that housing, and that the provisions of G.L.c. 30A, therefore, required *458 the EOCD to provide the plaintiff with an adjudicatory hearing, conducted under G.L.c. 30A, §§ 10 and 11, at which he could contest the authority's basis for the rejection. We agree that this result is required under the relevant provisions of G.L.c. 30A.
An "`[a]djudicatory proceeding' is defined in G.L.c. 30A, § 1, as `a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing.' If the proceeding is `adjudicatory,' then it must comply with §§ 10 and 11 [of c. 30A]." Forsyth School for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 214 (1989). See General Chem. Corp. v. Department of Envtl. Quality Eng'g, 19 Mass. App. Ct. 287, 289-290 (1985).
The plaintiff is, of course, a "specifically named person." The EOCD is an "agency," as defined in G.L.c. 30A, § 1 (2). Under the EOCD's prior and present regulations, the agency has the task of determining the legal rights of a person, like the plaintiff, whose application for public housing has been rejected by a local housing authority. Under the regulations in effect prior to June 30, 1993, the EOCD was responsible for reviewing an adverse decision by an authority "for its compliance with applicable statutes and regulations," and notifying the authority and the applicant of its decision in the matter within thirty days. 760 Code Mass. Regs. § 5.12 (3) (1989). Although the prior regulations may not have stated expressly that the EOCD had the power to affirm or reverse the action of an authority, see note 4, supra, the right to EOCD review plainly implies the power to accept or to reject the decision of an authority.[8] In a practical sense, then, an applicant's eligibility for public housing is finally determined *459 by the EOCD. See Cambridge Elec. Light Co. v. Department of Pub. Utils., 363 Mass. 474, 500 (1973).
The remaining question, therefore, is whether the plaintiff had a property interest in his eligibility for public housing "which would invoke the protection of the due process clause of the Fourteenth Amendment to the United States Constitution, and of art. 10 of the Declaration of Rights of the Massachusetts Constitution." School Comm. of Hatfield v. Board of Educ., 372 Mass. 513, 514-515 (1977). General Chem. Corp. v. Department of Envtl. Quality Eng'g, supra at 290. "Property interests `are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state laws  rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Haverhill Manor, Inc. v. Commissioner of Pub. Welfare, 368 Mass. 15, 23, cert. denied, 423 U.S. 929 (1975), quoting Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). As a general rule, when State or Federal law entitles an individual meeting certain eligibility criteria to the receipt of a State or federally funded benefit, the individual has a property interest in the benefit. See, e.g., Goldberg v. Kelly, 397 U.S. 254 (1970) (welfare benefits); Butland v. Bowen, 673 F. Supp. 638, 640-641 (D. Mass. 1987) (welfare benefits); Roslindale Motor Sales, Inc. v. Police Comm'r of Boston, 405 Mass. 79, 82-83 (1989) (license). However, to the extent the agency or other entity responsible for awarding the benefit possesses discretion to decide whether to grant or withhold the benefit, it becomes less likely that a potential recipient will be found to have a constitutionally protected property interest. See, e.g., Roslindale Motor Sales, Inc. v. Police Comm'r of Boston, supra at 83; Ressler v. Pierce, 692 F.2d 1212, 1215 (9th Cir.1982). We turn, therefore, to the standards governing tenant selection by local housing authorities to ascertain whether they are restrictive enough to create a property interest.
Eligibility and qualification for placement in public housing administered by an authority are governed extensively by regulations promulgated by the EOCD. See G.L.c. 121B, *460 § 29 (1992 ed.). See also Harborview Residents' Comm., Inc. v. Quincy Hous. Auth., 368 Mass. 425, 429 (1975). Eligibility for State-aided public housing is determined by reference to 760 Code Mass. Regs. § 4.00, which contains criteria based solely on an individual's (or a family's) financial means, a matter apparently not in question in the plaintiff's case. On receipt of an application from an eligible person (or family), a local housing authority must determine the applicant's priority status and whether the applicant is within a preference category. See 760 Code Mass. Regs. § 5.06 (5) (c). Mandatory priority and preference categories also are established by EOCD regulation. See 760 Code Mass. Regs. § 5.08. When space becomes available, an applicant is offered public housing based on priority and preference status, and in chronological order based on date of application. See 760 Code Mass. Regs. § 5.09. An applicant who is otherwise eligible may be disqualified for public housing by an authority only for one of eight reasons set out in 760 Code Mass. Regs. § 5.07.[9]
An individual meeting the eligibility criteria established by the EOCD, and not otherwise subject to disqualification, may not immediately receive public housing, if the authority's supply of public housing stock is insufficient to accommodate all eligible applicants.[10] Nonetheless, as housing is allocated essentially on a first-come, first-served basis, within strictly delineated preference and priority categories, an applicant has an identifiable interest in his position on the list of individuals eligible for public housing.
*461 In Hill v. Group Three Hous. Dev. Corp., 799 F.2d 385 (8th Cir.1986), and Eidson v. Pierce, 745 F.2d 453 (7th Cir.1984), decisions relied on by the EOCD, two United States Courts of Appeals concluded that low income applicants for privately owned, federally subsidized housing, did not possess a constitutionally protected property interest in "Section 8" housing benefits. Those decisions, however, rested on the fact that a private landlord's "judgment about a tenant's acceptability is not constrained by any legal criteria under Section 8. The statute, regulations and contracts suggest information which might be relevant, but they provide no guidance in weighing that information. Instead, the matter is left entirely to the owner's business judgment." (Emphasis in original.) Eidson v. Pierce, supra at 462. The broad discretion in tenant selection given to private Section 8 landlords meant, in the opinion of these courts, that applicants had no "entitlement" to Section 8 benefits, as that term was used in the opinion in Regents of State Colleges v. Roth, supra, and, therefore, did not have a property interest in those benefits. Id. at 457-462. See Hill v. Group Three Hous. Dev. Corp., supra at 392-393. At least one United States Court of Appeals has rejected this view. See Ressler v. Pierce, supra at 1215 (applicant for Section 8 housing has protected property interest in application for private housing because Federal Section 8 regulations limit landlord's discretion in tenant selection).
The plaintiff points out, however, that Federal courts that have dealt with cases in which the landlord was a public housing authority, rather than a private individual or entity, have uniformly concluded that an applicant has a property interest in his or her eligibility for public housing, and that, consequently, some measure of due process was required in the consideration of the application. See Holmes v. New York City Hous. Auth., 398 F.2d 262 (2d Cir.1968); Tedder v. Housing Auth. of Paducah, 574 F. Supp. 240 (W.D. Ky. 1983); Neddo v. Housing Auth. of Milwaukee, 335 F. Supp. 1397 (E.D. Wis. 1971); Davis v. Toledo Metro. Hous. Auth., 311 F. Supp. 795 (N.D. Ohio 1970). The weight of *462 authority supports the plaintiff's view that there is an identifiable property interest held by applicants for State-funded public housing. Here, unlike the situation with respect to Section 8 housing that influenced the Eidson and Hill courts, the EOCD regulations governing tenant selection by authorities leave room for the exercise of discretion only in the application of clearly defined legal criteria, and not for other, unspecified reasons. Further, the EOCD appears to acknowledge in its regulations, see notes 4 and 7, supra, which provide for review of an authority's application of the legal criteria embodied in the EOCD regulations, that an authority's rejection of an applicant for housing is subject to meaningful review.
The EOCD also points out that the United States Supreme Court has not yet held that an applicant for public benefits, as opposed to a recipient of such benefits, has a protected property interest. See Lyng v. Payne, 476 U.S. 926, 942 (1986). "In numerous cases, however, lower courts have accorded due process rights to applicants [for public benefits]." Butland v. Bowen, supra at 641. See Wright v. Califano, 587 F.2d 345, 354-356 (7th Cir.1978); Holmes v. New York City Hous. Auth., supra at 265; Dealy v. Heckler, 616 F. Supp. 880, 886 (W.D. Mo. 1984). See also Ressler v. Pierce, supra; Correia v. Department of Pub. Welfare, 414 Mass. 157 (1993) (applicants for public assistance entitled to due process protection); L.H. Tribe, American Constitutional Law § 10-9, at 690 & n. 37 (2d ed. 1988) ("[I]t would be inconsistent with any intelligible rationale underlying due process protection to deny all procedural safeguards to the new applicant where the law provides that all individuals meeting certain objective criteria are entitled to, say, welfare"). For a person in the plaintiff's position, public housing is very likely to be housing of last resort and, it is self-evident that the availability of such housing is of critical importance. We conclude that the plaintiff has a constitutionally protected property interest in his eligibility for public housing.
When a constitutionally protected property interest is at stake, the terms of c. 30A, § 1 (1), require that a hearing *463 before an agency, at which receipt or denial of a benefit is determined, be conducted in accordance with the dictates of c. 30A, § 10 and 11. See Cambridge Elec. Light Co. v. Department of Pub. Utils., 363 Mass. 474, 501 (1973). See also General Chem. Corp. v. Department of Envtl. Quality Eng'g, 19 Mass. App. Ct. 287, 293 (1985) ("If due process requires any type of hearing, G.L.c. 30A, § 1 [1], mandates that the [agency] conduct an `adjudicatory proceeding' in accordance with G.L.c. 30A, §§ 10, 11" [emphasis in original]).[11] The judge correctly concluded that an adjudicatory hearing was required in the plaintiff's case.[12]
We make a final observation on this issue. The defendant has not suggested that requiring the EOCD to comply with *464 the mandates of G.L.c. 30A, §§ 10 and 11, in cases of this sort, will result in numerous protracted disputes. Because a need for shelter is a problem requiring prompt attention, and the issues to be resolved are relatively simple, it is hoped that most disputes will continue to be resolved at the stage of the informal conference. Cf. Cambridge Elec. Light Co. v. Department of Pub. Utils., supra at 501. When that is not possible, however, under the present statutory and regulatory scheme, the applicant for public housing is entitled to an adjudicatory hearing.
2. Ex parte communications between the authority and the EOCD. The judge found that the EOCD acted improperly by considering information submitted to it ex parte by the authority. While the EOCD does not dispute that its regulation governing the provision of information to the opposing party was violated, it contends that this violation did not warrant the broad and detailed declaration made by the judge. We agree.
The EOCD regulations governing an appeal to the agency of an adverse decision by a local housing authority prohibit ex parte communications between the local housing authority and the agency. Past and present regulations require the parties to provide copies of their submissions to the EOCD to the opposing party. See 760 Code Mass. Regs. § 5.12 (3) (1989); 760 Code Mass. Regs. § 5.12 (5) and (6) (1993). There is no evidence here of a consistent pattern of violations of the regulations by the EOCD. Cf. Nelson v. Commissioner of Correction, 390 Mass. 379, 387 n. 11, 388 n. 12 (1983). The courts of the Commonwealth generally have refrained from ordering public officials to comply with the law because, in the absence of evidence of a pattern of misconduct, it is assumed officials will do so. See Massachusetts Coalition for the Homeless v. Secretary of Human Servs., 400 Mass. 806, 823-825 (1987); Hoffer v. Commissioner of Correction, 397 Mass. 152, 156 (1986). Errors in the agency's handling of a single applicant's case do not warrant relief which enjoins EOCD representatives from ex parte communications with local housing authorities.
*465 3. The judgment entered in the Housing Court is vacated. A new judgment will enter, declaring that the Secretary of the Executive Office of Communities and Development is obligated to provide hearings in the form required by G.L.c. 30A, §§ 10 and 11, on appeals from decisions of local housing authorities denying eligibility for housing. The plaintiff has requested an award of attorney's fees in connection with this appeal. He is entitled to such an award, see Haddad v. Gonzalez, 410 Mass. 855, 873 (1991), which should be calculated in accordance with the principles expressed in Yorke Management v. Castro, 406 Mass. 17, 20 (1989).
So ordered.
NOTES
[1] Springfield Housing Authority.
[2] The appeal has actually been taken from a document entitled "Order for Final Judgment as to Defendant ... Secretary of the Executive Office of Communities and Development (Mass. R. Civ. P. 54 [b])." The document disposes of the claims against EOCD, was intended to constitute a partial judgment, and was properly certified under Mass. R. Civ. P. 54 (b), 365 Mass. 821 (1974). See Gibbs Ford, Inc. v. United Truck Leasing Corp., 399 Mass. 8, 11 (1987); Lewis v. Emerson, 391 Mass. 517, 519-520 (1984).
[3] Section 5.12 (1) (1989) read, in pertinent part, as follows:

"If the applicant is found ineligible under 760 CMR 4.00 (Eligibility in State-aided Public Housing) or unqualified under 760 CMR 5.07 at the time of preliminary or final determination, the applicant may request, within ten (10) days of receipt of the notice from the LHA [local housing authority], a private conference with the LHA Executive Director. The Executive Director may designate a person not previously involved in the decision to conduct the conference and make a determination. The purpose of the Conference is to discuss the reasons for the LHA's decision and to permit the applicant, or his or her representative, to present rebuttal or additional information, ask questions of those present, offer documentation, testimony or argument. Within ten (10) working days after such Conference, the LHA shall notify the applicant in writing of its decision with an explanation of its reasons and specify any change, if appropriate, in the applicant's eligibility, qualifications, priority, or preference statute. A notice adverse to the applicant shall include the provisions of 760 CMR 5.12 (2)...."
[4] These provisions read, in pertinent part, as follows:

"(2) If the applicant is dissatisfied with the action of the LHA, he or she may request, within ten (10) days of receipt of the LHA's notice, a review by the Secretary of the Executive Office of Communities and Development...."
"(3) At the time of requesting review by the Secretary the applicant shall provide the LHA with a copy of the request.... The Secretary or her designee shall review the decision of the LHA for its compliance with applicable statutes and regulations and notify the applicant and the LHA within thirty (30) days. The Secretary reserves the right to return the matter to the LHA for further consideration if new information in support of the application, not previously considered by [the] LHA, is submitted."
[5] A third claim against the EOCD, that it had not met its obligation to render a decision in a timely manner on an appeal from an authority which had denied an application for public housing, has been rendered moot by the EOCD's revision of 760 Code Mass. Regs. § 5.12. That revision requires the EOCD to decide an appeal within sixty days. The plaintiff agrees that this claim is now moot and he no longer presses it.
[6] This last declaration reads as follows:

"It is hereby declared that in making decisions under 760 CMR § 5.12, the Secretary [of EOCD] may neither consider any written submissions by representatives of local housing authorities regarding the appeal that have not also been provided to the applicant nor issue any written communications to local housing authorities regarding the appeal unless a copy of the communication is simultaneously issued to the applicant. With respect to oral or telephonic communications, EOCD staff shall not initiate, accept, or participate in such communications regarding the subject matter of the appeal with the exception of communications relating to purely procedural matters (such as scheduling). In the event of ex parte communications on purely procedural matters, notice must be provided to the applicant promptly following any such communication, including the substance of the matters discussed, and the applicant must be given an opportunity to provide his or her input on the matter before any decision is made."
[7] On July 30, 1993, the EOCD adopted revised regulations, which set out in considerable detail a new procedure for EOCD review of a local housing authority's denial of eligibility, qualification, priority status, or preference status of an applicant for public housing. The revised regulations continue to provide for EOCD review of local housing authority decisions on the basis of written argument and documentation. Review by the EOCD is discretionary with the agency. See 760 Code Mass. Regs. § 5.12 (7) (1993).
[8] As was previously noted, the current version of 760 Code Mass. Regs. § 5.12 provides explicitly that the EOCD may "uphold, set aside, modify or vacate" a decision of a local housing authority.
[9] Disqualification may be based only on reasons such as a history of failure to pay rent within the last twelve months, 760 Code Mass. Regs. § 5.07 (3); falsification of information on an application for housing, § 5.07 (7); facts establishing that an applicant is incapable of independent living, § 5.12 (5); or a record of criminal or other disruptive behavior likely to interfere with the well being of other public housing tenants, § 5.07 (1) and (2).
[10] The record does not disclose the plaintiff's status with reference to preference and priority categories, nor does it disclose details as to the availability of public housing in Springfield.
[11] The plaintiff argues that the EOCD's "broad authority over all facets of local housing authority operations" necessarily requires that the EOCD provide an adjudicatory hearing for an applicant rejected by a local housing authority. Our decision does not rest on this basis, but rather on the language of G.L.c. 30A, and the fact that the EOCD has by regulation allocated to itself the responsibility of determining whether a local housing authority's rejection of an application for public housing was proper. See Healey v. Commissioner of Pub. Welfare, 414 Mass. 18, 26 n. 7 (1992) (where State agency has undertaken to provide certain benefits or services, it must do so in accord with governing statutes).

As an alternative basis for his order, the judge concluded that the plaintiff was entitled to an adjudicatory hearing before EOCD on the basis of the supremacy clause of the United States Constitution, and the terms of 42 U.S.C. § 1437d(c), (e) (1988). Because we conclude that the plaintiff is entitled to an adjudicatory hearing before the EOCD based on the language of c. 30A, we need not, and do not, consider the alternative basis for the order.
[12] The EOCD also contends that the absence of review by the United States Department of Housing and Urban Development of determinations of eligibility for federally subsidized housing by public housing authorities should be taken as establishing that the EOCD also has no obligation to provide an adjudicatory hearing to a rejected applicant. This contention ignores the fact that, unlike its Federal counterpart, the EOCD has undertaken (by regulation) the duty to review the rejection decisions of the authorities it supervises. The contention also overlooks the fact that the Federal Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. (1988), mandates adjudicatory hearings only when "adjudication is required by statute." 5 U.S.C. § 554 (a). Unlike the express language of G.L.c. 30A, § 1 (1), the claim of a constitutionally protected property interest does not trigger the right to an adjudicatory hearing under the Federal act.