In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1964

MARSHALL FINCHER,

*Plaintiff-Appellant,*

*v.*

SOUTH BEND HERITAGE FOUNDATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:07-CV-308—**Philip P. Simon**, *Chief Judge.*

ARGUED FEBRUARY 26, 2010—DECIDED MAY 10, 2010

Before FLAUM and WOOD, *Circuit Judges,* and ST. EVE, *District Judge.*[*]

FLAUM, *Circuit Judge.* Defendant-appellee South Bend Heritage Foundation ("SBHF") denied plaintiff-appellant Marshall Fincher's application for Section 8 housing in its building because Fincher had a prior eviction within

[*] Hon. Amy St. Eve, District Judge for the Northern District of Illinois, is sitting by designation.

three years. Fincher brought a suit against SBHF on the theory that he was denied due process of law, or, in the alternative, that SBHF breached a contract with the United States Department of Housing and Urban Development ("HUD") to which Fincher was a third-party beneficiary. On appeal, Fincher recognizes that the controlling precedent in this Circuit holds that there is no cause of action for a person in his position. *See Eidson v. Pierce*, 745 F.2d 435 (7th Cir. 1984). Fincher asks us to overturn our precedent on this issue. For the reasons set forth below, we choose not to overrule *Eidson* and we affirm the district court's grant of summary judgment.

## I.  Background

The facts of this case are straightforward and not in dispute for the purpose of this appeal. South Bend Housing Authority ("SBHA") evicted plaintiff-appellant, Marshall Fincher from one of its public housing units. Fincher then applied to live in an apartment building owned by SBHF as a Section 8[1] tenant. SBHF denied Fincher's application because of his recent eviction from SBHA housing. SBHF did not grant Fincher a hearing concerning the denial of his application for tenancy.

Fincher filed suit against both SBHA and SBHF in state court alleging a number of violations of Section 8 and other housing laws. SBHA removed the case to federal

---

[1] Section 8 is used throughout this opinion to refer to Section 8 of the United States Housing Act, as amended, 42 U.S.C. § 1437f.

court. However, the district court remanded the claims involving SBHA back to state court because they were inherently tied to the state court eviction proceedings and thus fell under the *Rooker-Feldman* doctrine. In an earlier opinion we dismissed the appeal of the district court's decision regarding the SBHA claims because "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." *Fincher v. South Bend Housing Authority*, 578 F.3d 567, 568 (7th Cir. 2009) (citing 28 U.S.C. § 1447(d)). The district court retained jurisdiction over the claims against SBHF and granted summary judgment in favor of SBHF. In granting summary judgment, the district court relied on the settled Seventh Circuit precedent that Section 8 housing applicants do not have a defined property right in receiving housing at a specific location that would entitle them to a due process hearing. The district court also rejected Fincher's claim that Fincher had enforceable rights as a third-party beneficiary to a contract between HUD and SBHF.

## II. Discussion

On appeal, Fincher advances two main arguments for why we should reverse the district court's grant of summary judgment: (1) we should overturn our prior precedent and find that Section 8 housing applicants do have an enforceable property right such that it warrants a due process hearing when they are denied housing at a specific Section 8 housing location; and (2) he put forth sufficient evidence to create a triable issue of fact re-

garding his claim as a third-party beneficiary to a contract between SBHF and HUD. We review a district court's grant of summary judgement de novo. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). Summary judgment is proper where "there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Id.*; Fed. R. Civ. P. 56(c).

## A. Revisiting *Eidson v. Pierce*

Fincher recognizes that the holding of *Eidson v. Pierce*, 745 F.2d 453 (7th Cir. 1984) controls this case and squarely contradicts the outcome he is seeking. However, Fincher encourages us to overrule *Eidson* and adopt the analysis from a Ninth Circuit opinion on this issue that pre-dates *Eidson* and finds that there is an enforceable property right in this situation. Fincher also points to a case out of the District of New Jersey and a case from the Supreme Judicial Court of Massachusetts, both of which came after *Eidson*, to support his position that courts are now following the Ninth Circuit approach and therefore we should revisit the issue.

We start by reviewing the analysis in *Eidson*. In *Eidson*, we addressed the same question presented here: do Section 8 housing applicants who meet all Section 8 requirements and have already been deemed eligible for Section 8 have a protected right that entitles them to some form of due process when they are rejected from a specific Section 8 housing unit? *Eidson* held that

they do not. The court in *Eidson* first looked to the language of Section 8. Section 8 authorizes the Secretary of HUD to make "assistance payments . . . with respect to existing, newly constructed, and substantially rehabilitated housing" for the purpose "of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing." *Eidson*, 745 F.2d at 457 (citing 42 U.S.C. § 1437f(a) (1982)). These payments to the owner are intended to make up the difference between what the Section 8 tenant pays and a maximum fair market rent established in the contract between HUD and the private owner. 42 U.S.C. § 1437f(c)(3). Under the contract, the private owner remains responsible for the operation and management of the housing units. Section 8 directs that the contract between the Secretary and the private owner

> [S]hall provide that all ownership, management, and maintenance responsibilities, including the selection of tenants and the termination of tenancy, shall be assumed by the owner (or any entity . . . with which the owner may contract for the performance of such responsibilities), except that the tenant selection criteria shall give preference to families which occupy substandard housing or are involuntarily displaced at the time they are seeking housing assistance under this section.

*Eidson*, 745 F.2d at 457 (citing 42 U.S.C. § 1437f(e)(2) (1982)). Under the regulations promulgated in response to this statute, the owner may consider whether a tenant is "otherwise acceptable" in addition to considering

whether the tenant meets the statutory requirements for Section 8 housing. 24 C.F.R. §§ 880.218(b)(3) and (4). The HUD Handbook reinforces this discretion by stating that "each Owner should develop reasonable Tenant selection procedures . . . designed to select applicants who will not only meet the Tenant eligibility requirements for HUD's subsidy programs but will also be responsible tenants." *Eidson*, 745 F.2d at 459 (citing HUD Handbook ¶¶ 2-8, Germain App. at 38). Based on these statutory provisions and regulations, the court in *Eidson* recognized a tension between the lofty goals of Section 8 and the reality that there is a gap between Section 8 resources and the needs of all those eligible for Section 8. The court in *Eidson* reasoned that Congress intended to remedy this tension in a practical manner by allowing private owners to consider less tangible factors, such as whether an individual would be a responsible tenant, in addition to statutory eligibility.

Against this backdrop, the court then turned to whether an applicant for a specific Section 8 residence has a due process right to a hearing if he is denied housing. The court looked to our previously adopted statement that a legitimate claim of entitlement to warrant a due process hearing occurs "only when the statutes of regulations in question establish a framework of factual conditions delimiting entitlements which are capable of being explored at a due process hearing." *Id.* at 459-60 (quoting *Geneva Towers Tenants Organization v. Federated Mortgage Investors*, 504 F.2d 483 (9th Cir. 1974) (Hufstedler, J. dissenting)). Applying this definition to Section 8, it is clear that there is no legitimate claim to

entitlement for individuals rejected from a specific housing unit. Under Section 8, even if a plaintiff proved that the landlord relied on false information in coming to its decision to deny the plaintiff housing, the plaintiff still would not be entitled to the housing so long as the housing went to another eligible candidate. *Id.* Therefore, the due process hearing would be meaningless. *Id.* The court illustrated this point by distinguishing Section 8 from the Hill Burton Act, 42 U.SC. §§ 291 et seq., which was at issue in *Davis v. Ball Memorial Hospital Association*, 640 F.2d 30, 42 (7th Cir. 1980). Under the Hill-Burton Act, hospitals receiving federal funding must provide "a reasonable volume of services to persons unable to pay therefor" to the extent that the financial condition of the facility permits. *Davis*, 640 F.2d at 32 (citing 42 U.S.C. § 291c(e)). As one may expect, free hospital care suffers from the same scarcity problem as public housing. However, the Hill-Burton Act set out a clear first-come-first-serve basis for establishing an entitlement. *Id.* at 42-43. Therefore, a hearing could establish facts sufficient for a neutral hearing officer to determine if the individual was entitled to these services. Unlike the Hill-Burton Act, Section 8 provides no clear decision-making structure. Rather, Section 8 provides landlords with a series of guidelines to apply when choosing between two eligible candidates and leaves the landlord with considerable discretion in making the final decision.

Our circuit and other circuits have relied on *Eidson* in addressing similar cases. The Eighth Circuit specifically adopted the reasoning from *Eidson* when

deciding a nearly identical case. *Hill v. Group Three Housing Development Corporation*, 799 F.2d 385 (8th Cir. 1986). Also, this Court applied the reasoning from *Eidson* in *Talley v. Lane*, 13 F.3d 1031 (7th Cir. 1994), to reject an alleged due process violation when the plaintiff was rejected from the Chicago Housing Authority's housing program for the disabled because of his extensive criminal history. 13 F.3d at 1035. These cases demonstrate that courts, including ours, have reconsidered and endorsed the reasoning from *Eidson*.

Fincher raises several issues in his argument for why we should overturn *Eidson*. First, he repeatedly points to *Ressler v. Pierce*, 692 F.2d 1212 (9th Cir. 1982), a Ninth Circuit case that directly contradicts *Eidson*. The problem with this reliance is that this Court has already specifically rejected the reasoning from *Ressler* in *Eidson*. *Eidson*, 745 F.2d at 460. The court in *Eidson* did not follow *Ressler* because the decision in *Ressler* rested on a definition of "claim of entitlement" that our circuit had previously rejected. *Id.* ("As noted above, however, this circuit has consistently followed the reasoning of Judge Hufstedler's dissent in *Geneva Towers* rather than the majority opinion relied on in *Ressler*. In our view, that reasoning compels the conclusion that these plaintiffs do not have protected property interests.").

Fincher next directs our attention to *Baldwin v. Housing Authority of the City of Camden, N.J.*, 278 F. Supp. 2d 365 (D.N.J. 2003). However, *Baldwin* is not instructive here. The court in *Baldwin* dedicates nearly a page to distinguishing that case from *Eidson*. 278 F. Supp. 2d at 379.

In *Baldwin* the question was whether an individual had a right to a due process hearing when she was denied eligibility for the Section 8 housing program in Camden, New Jersey. This is a different issue than the one addressed in *Eidson*. In *Eidson* we did not address the issue of what due process rights an individual has when his application for eligibility for Section 8 is denied. Rather, we addressed the issue of what due process rights an eligible applicant has when he is denied housing at a specific residence. By applying the standard for an entitlement right that we applied in *Eidson*, the decision in *Baldwin* comports with the reasoning in *Eidson*. When addressing the eligibility of an individual for a Section 8 voucher, there is a framework of factual conditions that could be explored at a due process hearing. A neutral hearing officer could find certain facts and order a remedy—that the individual be found to be eligible for a Section 8 voucher. This is different from the situation where an eligible applicant has been rejected from a specific residence. In this latter situation, a hearing officer would be powerless to change the situation under the statutory scheme regardless of what facts the hearing officer found.

Lastly, Fincher cites *Madera v. Secretary of the Executive Office of Communities & Development*, 636 N.E.2d 1326 (Mass. 1994) as new authority on the issue at hand. However, *Madera* addresses a situation where the defendants were allegedly in violation of numerous state public housing regulations that set forth mandatory priority and preference categories. 636 N.E.2d at 1330. The *Madera* court specifically recognized the difference between the state

regulations at issue in that case and the federal regulations at issue in *Eidson*. *Id.* at 1330-31. Therefore, *Madera* does not call into question the reasoning from *Eidson*.

Fincher's last argument on the due process issue is that the district court erred by not considering whether SBHF was a state actor when determining if *Eidson* precluded a suit under the due process clause. For the due process claim to survive to the summary judgment stage of litigation, the district court had to assume that SBHF was a state actor. If SBHF was not a state actor, there would be no due process claim at all. Contrary to Fincher's argument, the district court assumed that SBHF was a state actor and still found that Fincher had no due process right to a hearing as a tenant rejected from a specific Section 8 housing location.

Because *Eidson* was a well-reasoned opinion, and no significant changes in the law have occurred between when we decided that case and now, we decline the invitation to overturn *Eidson* and affirm the district court on the due process challenge.

## B. Fincher as a Third-Party Beneficiary to a Contract

Fincher next asserts that he is entitled to bring suit as a third-party beneficiary of a contract entered into between SBHF and its funding agencies, namely HUD. The district court rejected this claim because Fincher did not produce the contract nor did Fincher identify any contract terms or provisions he believes provide him with the basis for a claim as a third-party beneficiary.

Fincher claims the district court erred by requiring him to cite a contract or contractual provision for which he is a third-party beneficiary. He relies on *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977) for the proposition that "the third-party beneficiary status in federally funded programs stems alone from the existence of administrative rules imposed by the funding source and the recipient of those funds." However, at both the district court level and on appeal, Fincher did not point to any specific regulations that could stand in the place of a contract to support his claims. In his reply brief, Fincher cites to 24 C.F.R. § 880.550(a), which requires that there exists some contract between HUD and Section 8 landlords. This argument misses the point. Fincher still must point to specific regulations (or contract provisions) that are being violated in this case to give rise to a cause of action. It is possible that this absence is intentional because, as pointed out by *Eidson*, the regulatory structure does not provide any enforceable rights to individuals applying to live in a specific Section 8 residence. Without pointing to some contractual provision (or regulation) that grants him these rights and that SBHF has violated, this claim cannot stand. The district court correctly granted summary judgment on this issue.

### III. Conclusion

For the above stated reasons, we AFFIRM the district court's grant of summary judgment in favor of SBHF.