## WOOD WASTE OF BOSTON, INC. *vs.* BOARD OF HEALTH OF EVERETT.

No. 99-P-1042.

Middlesex. February 12, 2001. - August 24, 2001.

Present: JACOBS, KAPLAN, & DUFFLY, JJ.

*Solid Waste Management. Municipal Corporations,* Board of health. *Department of Environmental Protection.*

A Superior Court judge did not err by reversing a decision by a city's board of health denying the plaintiff's application for a determination of site suitability under G. L. c. 111, § 150A, in order to construct buildings on its current site so as to enclose its operations, and by ordering the board to issue the site assignment requested by the plaintiff, where the board made no claim that it was not provided with an adequate opportunity for review, or that the statutory and regulatory procedures were inadequate, or that it was unable to marshal appropriate resources to review the plaintiff's application. [332-338]

CIVIL ACTION commenced in the Superior Court Department on May 3, 1996.

The case was heard by *Martha B. Sosman,* J., on a motion for judgment on the pleadings.

*John W. Giorgio & Christopher J. Pollart,* for the defendant, submitted a brief.

JACOBS, J. The board of health of Everett (board) appeals from a Superior Court judgment ordering it to issue a site assignment requested by Wood Waste of Boston, Inc. (Wood Waste), under G. L. c. 111, § 150A. We affirm.

*Background.* In 1993, Wood Waste, which owns and operates a facility on a site in Everett for processing of construction and demolition waste materials, applied to the board and the Department of Environmental Protection (DEP) for a determination of

site suitability under G. L. c. 111, § 150A.[1] Wood Waste's operations were at that time conducted outdoors and involved separation of the construction and demolition materials and transportation to other sites for disposal. No materials are disposed of on the Everett site. The record indicates that Wood Waste proposed to construct buildings on the site so as to enclose its operations, including temporary storage of materials, and, as noted by the judge, did not plan to expand either the types or volume of wastes handled at the facility. Simultaneously with its application, Wood Waste negotiated with DEP for an administrative consent order, which was issued in 1995, and under which Wood Waste has been allowed to continue its operations pending issuance or denial of site assignment and required permits. Prior to issuing that order, DEP reported that Wood Waste's application met the statutory and regulatory site suitability criteria under § 150A½.[2] After receiving the DEP report, the board held a public hearing. At the conclusion of its review, the board, in April, 1996, denied the application. Wood Waste appealed the board's decision to the Superior Court under G. L. c. 30A, § 14. A Superior Court judge, acting on the parties' cross motions for judgment on the pleadings, allowed that of Wood Waste, essentially concluding that the board had failed to apply the statutory standard of review, and had improperly denied Wood Waste's application.

*Site assignment procedure.* General Laws c. 111, § 150A, as

---

[1]"In response to a shortage of solid waste facilities in the Commonwealth in the mid-1980's, the Legislature amended [§ 150A]." *TBI, Inc.* v. *Board of Health of N. Andover*, 431 Mass. 9, 11 (2000). See St. 1987, c. 584, § 16. The amendment significantly changed the process for assignment of sites for solid waste facilities. The sole approval authority previously vested in local boards was replaced with a two-step process in which the Department of Environmental Protection and the local board independently must find that the proposed siting meets specific criteria designed to protect the public and the environment. Those criteria are set forth in § 150A½. Although various amendments have been made in §§ 150A and 150A½, and the regulations thereunder, since the time of Wood Waste's application, no claim is made, nor do we discern, that those changes are of significance to this decision.

[2]General Laws c. 111, § 150A½, authorizes the DEP, in cooperation with the Department of Public Health, to promulgate rules and regulations to establish site suitability standards and criteria for siting of facilities, setting forth seventeen areas of potential impact on public health, safety, and the environment which must be considered by the DEP and a local board in a siting decision.

amended by St. 1987, c. 584, § 16, provides that an applicant "desiring to maintain or operate a site for a new [solid waste] facility or the expansion of an existing facility" shall submit an application for site assignment to the local board of health and simultaneously provide copies to the DEP, the Commonwealth's Department of Public Health (DPH), and to the board of health of any municipality within one-half mile of the proposed site. Within sixty days the DEP must issue a report stating whether the proposed site meets the criteria established under § 150A½, and the DPH must comment on any potential impact of the site on public health and safety. If the DEP affirms in its report that the siting criteria in § 150A½ have been met, the local board must hold a public hearing within thirty days of receipt of the DEP's report, and render its decision within forty-five days of the initial hearing date.[3] Any person aggrieved may appeal a board's decision under G. L. c. 30A, § 14.[4] An applicant receiving a site assignment must subsequently obtain a permit from the DEP for the construction and operation of the facility after review of detailed operating plans and specifications.

*Discussion.* The board in this case principally based its denial of the application on the ground that Wood Waste failed to submit adequate information from which the board could evaluate whether certain of the siting criteria were met.[5] It argues the judge erroneously concluded it was without discretion to deny the application on such a ground.

---

[3]The regulations generally define site assignment as "a determination by a board of health or by the [DEP] . . . that: (a) designates an area of land for one or more solid waste uses subject to conditions with respect to the extent, character and nature of the facility that may be imposed by the assigning agency after a public hearing . . . ." 310 Code Mass. Regs. § 16.02 (1992).

[4]A local board of health is declared by § 150A a state agency for appellate purposes. Among the limitations placed on agency decisions by G. L. c. 30A, § 14(7), are that they must not be in excess of statutory authority or based on error of law, and must be based on substantial evidence.

[5]The board determined that the information accompanying Wood Waste's application was deficient with respect to four site suitability criteria. Incident to holding that the board's request for more information is not a "finding," the judge addressed each of these criteria and correctly found that the record did not support the board's conclusions that further information was required. We summarize the judge's conclusions and note the sections of the regulations at 310 Code Mass. Regs. § 16.40 (1992), applicable to the specific site suit-

Section 150A provides that a local board of health "shall assign a place requested by an applicant as a site for a new facility or the expansion of an existing facility unless it makes a finding, based on the . . . siting criteria established by [§ 150A½], that the siting thereof would constitute a danger to the public health or safety or the environment."[6] G. L. c. 111, § 150A, as amended by St. 1987, c. 584, § 16. Other than allowing the imposition of conditions, the statute provides for no other disposition of an application by a board.[7] We, therefore, agree with the judge, who stated that the board's request for

ability criteria in issue.

(1) Separation between site surface and groundwater. § 16.40(3)(d)(5). The judge concluded that there was record evidence to show that groundwater was more than four to six feet below the site surface and no evidence to show that the required minimum distance of two feet in separation of groundwater from the site surface was violated or that a two-foot separation could not be maintained throughout the site.

(2) Traffic impacts. § 16.40(4)(b). The judge determined that data from actual operations did not indicate any significant contribution to traffic volume in the site area, nor were any actual safety problems observed or reported; and the record would not support an affirmative finding of danger. The judge also concluded that the board's expert did not opine that a danger existed, only that additional traffic studies were required before he could give an opinion.

(3) Air quality. § 16.40(4)(e). Because the major concern with Wood Waste's operations is dust, and it proposes to enclose its operations in buildings, it submitted information on the equipment and procedures it would use to control dust. The board's expert criticized operating and maintenance procedures, but no evidence was introduced tending to show that the proposed design or operating procedures were so inadequate as to result in an anticipated failure to meet air quality standards. Thus, the record did not support an affirmative finding of a siting problem requiring further information. In any event, the judge noted this issue is one more properly addressed in the later design and operation permit procedures.

(4) Prior use of area for disposal. § 16.40(4)(h). The judge concluded there was no record evidence indicating any prior contamination of the site that might adversely affect operations or that any such existing contamination would be disturbed by operations on the site. Accordingly, no further studies or information were required at this stage.

[6]The standard of decision in 310 Code Mass. Regs. § 16.20(10)(k)(2) (1992), tracking § 150A, states: "A board shall determine that a site is suitable for assignment as a site for a new or expanded solid waste facility unless it makes a finding, supported by the record of the hearing, that the siting thereof would constitute a danger to the public health, safety or environment, based on the siting criteria . . . ."

[7]A board may "include in any decision to grant a site assignment such limitations with respect to the extent, character and nature of the facility or

more information in order to make a determination of site suitability, "is not a 'finding' . . . and is thus not a basis on which an application may be denied."

The board also made either implicit or express findings of danger with respect to the criteria on air quality, size of the site, and traffic impacts. After a detailed review of the record, the judge correctly concluded the board's findings of danger[8] to public health, safety, or the environment were either not supported in the record or were based upon factors to be considered in a later design and operations review procedure.[9]

The board may not reasonably claim that sufficient information was not available to it during the application process. It

---

expansion thereof, as may be necessary to ensure that the facility or expansion thereof *will not present a threat to the public health, safety or the environment.*" 310 Code Mass. Regs. § 16.20(12) (1992).

[8]Danger is not defined in the statute or regulations. In any event, nothing in the present case turns on the meaning of that term.

[9]As to air quality and traffic impact, the judge determined, see note 5, *supra,* that the record did not support the board's findings of danger. The board partially based those findings on details of design and operation. The judge noted that the board failed to afford Wood Waste the presumption pursuant to 310 Code Mass. Regs. § 16.40(1)(c)(1) (1992) (a board "shall . . . evaluate[] [an application] with the presumption that the proposed facility shall be designed and constructed to meet all relevant state and federal statutory, regulatory and policy requirements"). She correctly noted that such details are "not to be part of the site assignment consideration unless DEP (not the Board on its own) decides that such details are necessary at [this] stage," and that the DEP had not requested such details for Wood Waste's application. She nevertheless analyzed the record and implicitly determined that the board had not introduced evidence tending to rebut the presumption by showing that Wood Waste would later be unable to meet the applicable requirements.

As to issues concerning the size of the site, the judge correctly noted that "[t]here was no evidence that the current operation, which would be upgraded and enclosed but operating at the same volume under the new plan, had encountered size problems . . . and certainly no evidence that the size contraints would result in a danger to public health or safety." The board also purported to find a danger from the trucks awaiting entry to the site. As indicated by the judge, this finding is not supported by substantial evidence. Any other site size issues were properly treated by the judge as operational details to be addressed at a later stage of the statutory process.

While the board found that Wood Waste's site plan did not bear a stamp indicating it was prepared by a registered surveyor as required by regulation, the board does not rely on this ground in its brief. In any event, this alleged failing, while a proper basis for a request for resubmission of a conforming plan, is not sufficient as a ground for the board's rejection of the site application.

was presented with a substantial record prior to the deadline for its decision,[10] and had an opportunity to comment on its completeness and substance.[11] It selected and engaged an expert to review the application and report its analysis and conclusions to the board.[12] If the board believed the evidence before it at the hearing to be lacking, it could have requested that the hearing officer ask Wood Waste to provide further evidence.[13] See *TBI, Inc.* v. *Board of Health of N. Andover*, 431 Mass. 9, 13-14 (2000). An environmental impact review record, established in conformity with the Massachusetts Environmental Policy Act (MEPA), was available to the board.[14] Finally, the board received the report of the DEP which determined the application met the site suitability criteria. There is no indication in the record that the board questioned the completeness of the application, or made any requests to Wood Waste for further data or information prior to its decision.[15]

---

[10]An applicant is required to use forms provided by the DEP and to provide "sufficient data and other relevant information to allow the Department and the board of health to determine, independent of additional information, whether the site is suitable." 310 Code Mass. Regs. § 16.08(5)(a) (1992).

[11]It is open to a local board to comment to the DEP on the completeness of an application during a twenty-one day period after its submission. The DEP must issue a written determination of the completeness of an application, notifying the applicant and the local board. See 310 Code Mass. Regs. §§ 16.10(2), (3) (1992).

[12]Section 150A also provides that "[t]he [DEP] shall, upon request by the board of health, provide advice, guidance and technical assistance to said board during its review of a site assignment application. . . . The board of health may charge a reasonable application fee to cover the costs of conducting a hearing and reviewing technical data submitted to the board. The application fee may also include a portion of the reasonable costs of other technical assistance." G. L. c. 111, § 150A, as amended by St. 1987, c. 584, § 16.

[13]Pursuant to 310 Code Mass. Regs. § 16.30(2)(e)(1) (1992), after commencement of the public hearing a board may assess an additional technical fee to enable it to obtain data critical to the determination of site suitability where an applicant has failed to provide the evidence after being requested by the hearing officer.

[14]An applicant must demonstrate compliance with MEPA. 310 Code Mass. Regs. § 16.08(5)(d) (1992). The Secretary of Environmental Affairs issued a certificate indicating that Wood Waste's final environmental impact report complied with the requirements of MEPA. The record before the board contains the final report.

[15]There is no indication that any new information was submitted or

The judge properly evaluated the record before the board as established through the public hearing and certified to her, and correctly stated that the DEP decision was to be given no particular weight.[16] Unlike the DEP, a local board of health does not have the benefit of regulatory language expressly permitting it to deny an application based on a determination that it did not contain sufficient information. The board's request for further information in this case essentially ignores a record that adequately addressed each of the relevant criteria, and as the judge concluded, that record does not support findings of public danger.

While a local board of health is limited in the time in which it must make a decision, it receives an application at the same time as the DEP, and has ample opportunity to marshal the resources to conduct its review and ascertain any areas of concern where it may require further information from an applicant. Where, as in this case, the record, without the additional studies requested post-hearing by the board, is adequate for a determination under § 150A, those requests have no validity.

The present case is unlike *TBI, Inc.* v. *Board of Health of N. Andover, supra* at 14,[17] where the denial of the application resulted from an applicant's failure to respond adequately during the local board's hearing to a challenge to its ability to comply with a site suitability criterion. Here the board, rather than seeking additional evidence from Wood Waste or through its own resources during the application process, impermissibly rested its decision on a purported insufficiency of information.[18]

---

requested at the public hearing. The board received testimony of the board's expert, and representatives of Wood Waste, all of whom were cross-examined, and the testimony of public officials, abutters, and citizens.

[16]The determination of the DEP "is not binding on the local board which must make an independent determination whether the proposed site complies with the criteria [in § 150A½]." *TBI, Inc.* v. *Board of Health of N. Andover,* 431 Mass. at 11-12.

[17]That decision was issued on March 10, 2000, and was not called to our attention after the board's brief was docketed in this court on July 22, 1999. The present case was submitted to the panel on February 12, 2001, on the board's brief. No brief has been filed by Wood Waste.

[18]In *TBI, Inc.* v. *Board of Health of N. Andover, supra* at 13, the local board

*Conclusion.* General Laws c. 111, § 150A, requires a board, after review, to issue a site assignment *unless* it makes a finding that the siting would constitute a danger to the public health or safety or the environment. That finding must be supported in the record before it, and where such support is lacking, a reviewing court may, as provided in G. L. c. 30A, § 14(7), as amended by St. 1973, c. 1114, § 3, either remand the case for further proceedings before the board, or "compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced" by an unlawful or erroneous board decision. We agree with the judge that the appropriate remedy in this case is to order the issuance of the site assignment. Compare *Cohen* v. *Board of Registration in Pharmacy,* 350 Mass. 246, 253 (1966). As we have noted, the board has made no claim that it was not provided with an adequate opportunity for review, or that the statutory and regulatory procedures were inadequate, or that it was unable to marshal appropriate resources properly to review Wood Waste's application.

The board erroneously asserts that the judge's order compelling it to issue the site assignment is contrary to the board's regulatory authority to attach reasonable conditions to protect the public from threats of danger from operations at the site. Absent record evidence before the board reasonably supporting specific concerns for the environment or the health or safety of the public, a remand for the imposition of conditions is unwarranted. The judge correctly noted the site assignment in this case is "merely an interim step in a lengthy and detailed administrative process." In the circumstances of a local board's unsupported claim of insufficient information, and of danger to the public, a remand would constitute an unjustified interruption of a carefully designed and comprehensive legislative and regulatory process.

While Wood Waste's operations are controlled by an administrative consent order, they have been conducted outdoors

at the public hearing received evidence that the proposed facility would not be in compliance with air quality standards, and shifted to TBI the burden "to produce evidence that it could comply." Although given an opportunity, TBI failed to "enumerate specific techniques likely to be feasible and effective." *Id.* at 14.

and as the judge observed, "further delay in any upgrading and enclosing the facility does not serve the public interest." She noted that Wood Waste must yet undergo "significant, substantive review of the design, construction and operation of the facility," and that any persons aggrieved will have further opportunities in the course of the administrative process to seek judicial review of the decisions to be made by the DEP with respect to the application for a facility permit. Any ultimate threat of danger to the public from the construction and operation of the facility may further be addressed by appeal to the Superior Court. Moreover, § 150A also provides a board of health with a later, potent means of oversight of the operation of the facility:

> "Upon determination that the operation or maintenance of a facility results in a threat to the public health and safety or the environment, such site assignment decision by a board of health may be rescinded or suspended or may be modified through the imposition or amendment of conditions, at any time after due notice and public hearing satisfying the requirements of section eleven of chapter thirty A by the board of health of the city or town where such facility is located or by the [DEP]."

G. L. c. 111, § 150A, as amended by St. 1987, c. 584, § 16.

Accordingly, we conclude the judge did not err by reversing the board's decision and ordering it to issue the site assignment requested by Wood Waste.

*Judgment affirmed.*