## RicMer Properties, Inc. *vs.* Board of Health of Revere.

No. 01-P-1083.

Suffolk. January 22, 2003. - September 5, 2003.

Present: Jacobs, Duffly, & Berry, JJ.

.

*Solid Waste Management. Board of Health. Municipal Corporation,* Board of health. *Administrative Law,* Hearing, Intervention, Substantial evidence. *Practice, Civil,* Intervention.

A hearing officer for a city's board of health did not abuse his discretion in permitting the mayor and city council of the city to intervene as a party to a public hearing on an application for a site assignment of a waste disposal facility, and the applicant suffered no prejudice to its procedural due process rights from the decision. [174-179]

This court concluded that there was substantial evidence to support the decision of a city's board of health to deny an application for a site assignment of a waste disposal facility. [179-180]

Civil action commenced in the Superior Court Department on May 2, 2000.

The case was heard by *Joseph M. Walker III,* J., on a motion for judgment on the pleadings.

*Martin C. Pentz* for the plaintiff.

*Michael N. Sheetz* for the defendant.

Jacobs, J. In 1998, RicMer Properties, Inc. (RicMer), filed an application with the defendant board of health of the city of Revere (board) seeking site assignment of a waste disposal facility under G. L. c. 111, § 150A. Pursuant to that statute, an applicant who wishes to operate a solid waste facility must submit an application to the local board of health and simultaneously submit copies to the Department of Environmental Protection (DEP) and the Department of Public Health. If, as was the case here, the DEP issues a favorable report indicating that the siting criteria in G. L. c. 111, § 150A ½, have been met, the local board must hold a public hearing and issue its

decision. See generally *Wood Waste of Boston, Inc.* v. *Board of Health of Everett,* 52 Mass. App. Ct. 330, 332 (2001).

After the board held the statutorily required public hearing, it denied RicMer's application. RicMer sought review in the Superior Court pursuant to G. L. c. 30A, § 14, and, following a hearing, a judge of that court affirmed the board's decision and ordered judgment dismissing RicMer's complaint. In this appeal, RicMer claims that the board's decision should be reversed because the hearing was tainted by unlawful procedure when the mayor and city council of Revere together were allowed to intervene as a party; RicMer further claims that the board's findings that the proposed facility would pose a danger to public health, safety, and the environment were not supported by substantial evidence. We affirm.

*The proposed facility.* RicMer proposed a solid waste transfer and recycling operation of up to 1,000 tons per day of municipal waste, including garbage from households and commercial establishments, and construction and demolition debris. The site comprises approximately 3.75 acres in a general industrial zone in Revere, and is approximately 1.6 miles north of Logan International Airport. It was planned that trucks would deliver materials to, and remove them from, a building to be constructed on the site, entering and leaving through a proposed quick-opening industrial door system.

*The city's intervention.* On July 15, 1999, a preliminary hearing, conducted by counsel for the board, was held to establish rules of procedure, to consider any motions to intervene or participate, and generally to establish the rules for the subsequent substantive public hearings. RicMer was represented at the public hearing. A hearing officer was appointed without objection. Counsel for the board described the roles of parties and participants, indicating that there had been substantial public interest in the project, and that a number of local and State elected officials had expressed interest in presenting statements.[1]

The hearing officer then accepted the suggestion of counsel

[1] There are several indications in the record that RicMer was well aware of the substance of the city's challenges to the proposed facility, beginning with the report of its engineering consultant submitted to the DEP for consideration during the DEP review process.

for the board that motions to intervene or participate be considered. Counsel for the city of Revere (city) stated he wished formally to intervene on behalf of the city, and filed a notice of appearance.[2] Following consideration of the requests of a number of individuals who identified themselves and requested designation as parties or participants, counsel for Ric-Mer stated his objection that there was no record of the city filing a registration under 310 Code Mass. Regs. § 16.20(9)(b) (1994) prior to the hearing. There was no request made of the hearing officer for any ruling or action. The hearing officer overruled the objection.

The substantive public hearing was held in sessions over thirteen days between July 15 and October 7, 1999. RicMer presented four expert witnesses. The city presented five experts. Both parties submitted a number of reports, studies, and plans as exhibits. Counsel for the city and for RicMer engaged in cross-examination of each witness. In their briefs, the parties do not cite any objections at the hearings to the testimony or the exhibits. A final hearing session was held on February 9, 2000, for the presentation of closing arguments from the several parties and participants. The mayor declined to make a statement, stating he would defer to counsel for the city. Two members of the city council made statements, as did one State representative.

A fair review of the public hearing process indicates that there was no prejudice to RicMer's procedural due process rights. RicMer's parsing of the regulations in an attempt to support counsel's objection at the hearing reveals, at most, an immaterial noncompliance by the city with certain formal requirements set forth in 310 Code Mass. Regs. § 16.20(9)(b).[3]

RicMer also argues that the city, in asserting its entitlement

---

[2] The handwritten notice states: "Please take notice that the undersigned hereby appears on behalf of the City of Revere at the direction of the Mayor and the City Council."

[3] Section 16.20(9)(b) states in relevant part:

"*Registration.* The registration of an abutter, group of abutters or ten citizen groups as a Party or the petition of a person to be an intervenor to the public hearing shall be valid only if submitted prior to the commencement of the hearing. The registration statement shall be signed under pains and penalty of perjury and contain the following information:

"1. name and address of the registrant(s);

to intervention, neither made a showing of good cause nor stated how it would be "specifically and substantively affected by the hearing." The term "good cause" is not defined in the regulations,[4] and 310 Code Mass. Regs. § 16.20(9)(a) (1994) does not explicitly require that the hearing officer enter on the record how a determination of good cause has been made, or how a person will be "specifically and substantively" affected before intervention is allowed. Moreover, "determin[ation]" is not defined. For these reasons, and because these regulations appear to have been based upon the more formal requirements of G. L. c. 30A,[5] we consider analogous practice under that chapter.

"2. proposed party status (abutter, group of abutters, ten citizen group or intervenor);

"3. identity of the Authorized Representative, if any;

"4. for individuals wishing to register as an abutter a description of the abutting property including its boundaries and current use and a statement that the registrant is the owner of the parcel; and

"5. for individuals or groups of individuals petitioning to be an intervenor a statement indicating how they will be substantially and specifically affected by the proposed facility."

The notice of appearance that was submitted by counsel for the city, see note 2, *supra*, while not signed under the pains and penalty of perjury, substantially complied with the other listed requirements of the regulation, when considered in the context of counsel's presentation to the hearing officer. (Counsel stated he was "formally intervening on behalf of the City of Revere at the direction of the Mayor and the City Council, and . . . filing herewith the Notice of Appearance to that effect.")

The city was not an individual or a group of individuals, and it therefore was not necessary to provide a statement indicating how the city "will be substantially and specifically affected by the proposed facility," as requested in item 5. Because this hearing was preliminary to the substantive or evidentiary hearing, the city's request properly may be deemed to have been made "prior to the commencement of the hearing."

[4]Title 310 Code Mass. Regs. § 16.20(9)(a) (1994) states in relevant part:

"*Intervention.* Any Person who with good cause wishes to intervene in a public hearing shall file a written request (petition) for leave to intervene. Persons whom the Hearing Officer determines are specifically and substantially affected by the hearing shall be allowed to intervene. . . ."

[5]The controlling statute on site assignment, G. L. c. 111, § 150A, merely states that "[w]ithin thirty days of the receipt of the [DEP's] report, the board of health shall hold a public hearing satisfying the requirements of [G. L. c. 30A]." Pursuant to that chapter, the preamble to the public hearing regulations, 310 Code Mass. Regs. § 16.20(1) (1994), states that the public hearings

The regulations with respect to intervention in this case parallel the Standard Adjudicatory Rules of Practice and Procedure, where intervention is allowed at the discretion of the presiding officer or the agency.[6] Compare *Boston Edison Co.* v. *Department of Pub. Util.*, 375 Mass. 1, 45, cert. denied, 439 U.S. 921 (1978); *Cablevision Sys. Corp.* v. *Department of Telecommunications & Energy*, 428 Mass. 436, 437, 439 (1998); *Selectmen of Stockbridge* v. *Monument Inn, Inc.*, 8 Mass. App. Ct. 158, 161-162 (1979), *S.C.*, 14 Mass. App. Ct. 957 (1982) (a judge is allowed a "full range of reasonable discretion in determining whether the requirements of intervention [under Mass.R.Civ.P 24(a)(2), 365 Mass. 769 (1974),] have been met").

The actions of the hearing officer and the parties on this record indicate that the intervention decision by the hearing officer was within the permissible bounds of discretion. Compare *Wilmington* v. *Department of Pub. Util.*, 340 Mass. 432, 434-435, 437 (1960) (intervention either expressly or impliedly permitted where town counsel entered an appearance in a G. L. c. 30A proceeding, presented evidence, cross-examined the other party's witnesses, presented oral argument, and filed a brief). The city's participation in this case did not constitute a substantive violation of the regulations. To the extent that there were any procedural deficiencies, they were inconsequential in view of the city's obvious and overriding interest in the location of a waste disposal site within its borders and of the hearing officer's implicit recognition of that interest by his allowing the city to participate as a party in the hearing.

There is no merit in RicMer's assertion that the participation of the "Mayor and City Council" as a party invited them to advance their political agenda.[7] Although counsel for the city

---

are not adjudicatory proceedings, and that the "public hearing process is designed to permit the flexibility and informality appropriate to the board of health proceeding, while providing the board of health with procedural direction and the authority to create a record and render a decision within a limited time period which is amenable to the procedures and the standards of judicial review applicable under [G. L. c. 30A, § 14.]"

[6]See 801 Code Mass. Regs. § 1.01(9)(a), (d) (1998); Cella, Administrative Law & Practice § 551 (1986 & Supp. 2002).

[7]RicMer asserts that had the "Mayor and City Council been limited to submitting statements," it might be assumed their opposition would not

stated he was appearing on behalf of the city "at the direction of the Mayor and the City Council," there is no indication in the record that counsel's presentation of evidence and witnesses, or his conduct in cross-examination and argument, in any way represented solely the views of the mayor or of the council members as individuals.[8] The city's presentation of evidence through five experts, not objected to by RicMer, focused on issues of air traffic hazards related to birds being attracted to the proposed facility; adequacy of size of the facility; impacts on traffic; noise; groundwater; attraction of vermin; odors; and air quality standards. In such well-known matters of public concern, municipalities may be in a significantly superior position to individual citizens in representing the public interest. Compare *Sudbury* v. *Department of Pub. Util.*, 351 Mass. 214, 218 (1966) (in an analogous proceeding for land taking proposed by a public utility, the court stated that "cities and towns are the only entities which can be expected to offer a real, practical, and adversary representation of the public interest").[9] Moreover, while the mayor and three city councillors testified, RicMer has not specifically identified what, if anything, constitutes a "political agenda" in any of their statements, nor has it done more than characterize their views in opposition to the application as

unduly influence the board's decision, but granting party status to them was an invitation to "advance their political agenda . . . having all the tools available to a Party."

We reject any suggestion by RicMer that the degree of the city's influence on the board can be determined by the extent of its participation, measured by transcript pages. RicMer calculates that about 847 of the total of 1,755 pages of transcript reflect the presentation of the city's evidence, related cross-examination, and the city's cross-examination of RicMer's witnesses. Compare *Boston Edison Co.* v. *Department of Pub. Util.*, 375 Mass. 1, 45-46, cert. denied, 439 U.S. 921 (1978).

[8]There is no merit in RicMer's assertion, not pressed at the board hearing, that the mayor and city council did not have "standing" to intervene.

[9]A leading commentator states that intervention "can only be properly evaluated in terms of the extent to which it has assisted, or is likely to assist, the administrative agency in the discharge and performance of its adjudicative function — that is to say, the extent to which it has assisted, or is likely to assist, the administrative agency in the discovery and development of adjudicative facts on the record in the agency's adjudicatory proceeding." Cella, *supra* at § 1702, at 256.

such an agenda.[10] The city's intervention, rather than advancing a political agenda, benefitted the proceedings by expanding the evidentiary record on which the board could base its decision.

Lastly, RicMer has not identified what "substantial rights" may have been prejudiced, see G. L. c. 30A, § 14, by any procedural error. It had ample opportunity to present its case. There is no indication in this record that the procedure was in any way so unfair as to raise a question of procedural due process. Compare *Marmer* v. *Board of Registration of Chiropractors*, 2 Mass. App. Ct. 162, 168-169 (1974), and cases cited.

*Substantial evidence.* There is no merit in RicMer's sweeping assertion that the board's denial was not supported by substantial evidence.[11] Pursuant to G. L. c. 111, § 150A, "the DEP's site suitability determination is not binding on the local board which must make an independent determination whether the proposed site complies with the criteria [of § 150A ¹/₂ and 310 Code Mass. Regs. § 16.40 (1994)]." *TBI, Inc.* v. *Board of Health of N. Andover*, 431 Mass. 9, 11-12 (2000).[12] The board conducted an extensive de novo proceeding, the report of which covers

---

[10]In its reply brief, RicMer states that while there is no direct evidence the members of the board "yielded to the influence of the Mayor and City Council," it urges that it is "an apt subject for judicial notice that the views of a City's Mayor and City Council are particularly likely to have sway with its Board of Health." Cynicism alone does not serve to establish a judicial principle. No basis in our jurisprudence has been cited, nor are we aware of any, which suggests that such implied and undifferentiated political influence is a proper subject of judicial notice.

[11]The board determined that: "[S]iting of the proposed facility would constitute a danger to the public health, safety or the environment because bird hazards from the facility would create a danger to air traffic using Logan Airport, the size of the facility is insufficient, traffic impacts from operations would constitute a danger, and there would be a danger posed by rats, noise, odors and other nuisance problems to adjacent dwellings, apartments and other sensitive receptors."

The board also concluded that no violations of State or Federal air quality standards or danger to groundwater bodies were demonstrated.

[12]While this opinion was published after the board's hearing in this case, the board cited it in its final decision, and also referred to the Superior Court's decision of December, 1998, underlying our opinion in *Wood Waste of Boston, Inc.* v. *Board of Health of Everett*, 52 Mass. App. Ct. 330 (2001). The parties rely on both cases in their briefs.

over 1,700 pages of transcript, most of it the testimony of the nine experts produced by the parties. It also received over two hundred exhibits. There is no claim by RicMer that the submission of evidence at the hearings should have been limited in any way. Cf. *TBI, Inc.* v. *Board of Health of N. Andover, supra* at 14-15. Much of the board's decision expressly was based on its detailed analysis and conclusions concerning the credibility of the experts and its reliance on the testimony of the city's witnesses.[13] "Under the substantial evidence test, a reviewing court is not empowered to make a de novo determination of the facts, to make different credibility choices, or to draw different inferences from the facts found by the [agency]." *Pyramid Co. of Hadley* v. *Architectural Barriers Bd.*, 403 Mass. 126, 130 (1988). See *Hotchkiss* v. *State Racing Commn.*, 45 Mass. App. Ct. 684, 695-696 (1998), and cases cited.

*Judgment affirmed.*

---

[13]In contrast, the DEP report refers to its general "experience," and indicates that certain matters such as size of the facility, prevention of attraction of birds, traffic modifications, and mitigation of nuisances are matters to be determined in a later construction and operation permit process.