ELIZABETH RIVAS *vs.* CHELSEA HOUSING AUTHORITY.

No. 10-P-976.

Suffolk. January 6, 2011. - August 31, 2011.

Present: RAPOZA, C.J., MILLS, & GREEN, JJ.

Further appellate review granted, 460 Mass. 1115 (2011).

*Housing Authority. Municipal Corporations,* Housing authority. *Administrative Law,* Hearing, Agency, Substantial evidence, Regulations. *Due Process of Law,* Hearing, Housing. *Housing.*

On an appeal from a decision of the local housing authority (authority), the plaintiff, a former participant in the Massachusetts rental voucher program, was not entitled to raise an argument that she failed to raise before the authority, namely, that the termination of her voucher violated due process principles because the authority did not conduct an informal settlement conference with her prior to the formal hearing; at any rate, the two hearings provided by the authority were adequate to satisfy the requirements of due process, and there was no showing, beyond mere speculation, that the plaintiff suffered any prejudice by reason of the failure to conduct an informal settlement conference. [298-300] MILLS, J., dissenting.

In an action brought in Superior Court by the plaintiff, who sought review of the decision of a local housing authority (authority) terminating her participation in the Massachusetts rental voucher program based on her failure to notify the authority that her mother had begun living with her, the judge properly entered judgment in favor of the authority, where there was no merit to the plaintiff's claims that the authority's board of commissioners entertained ex parte testimony or improperly considered material under principles applicable to judicial notice [300]; where there was substantial evidence before the authority's grievance panel to support its decision [300-301]; and where, as applied to the facts of the present case, the authority's conclusion that the mother's occupancy of the plaintiff's apartment for two weeks out of every month for eleven consecutive months constituted "living regularly" in the apartment within the meaning of the applicable regulations fit comfortably within the deference extended to the authority in matters of interpretation [301-302].

CIVIL ACTION commenced in the Superior Court Department on November 2, 2009.

The case was heard by *Nancy S. Holtz*, J., on motions for judgment on the pleadings.

*Joshua N. Garick* for the plaintiff.

*Thomas F. Feeney* for the defendant.

GREEN, J. After the Chelsea Housing Authority (authority) terminated Elizabeth Rivas's participation in the Massachusetts Rental Voucher Program (MRVP) based on her failure (in violation of MRVP regulations) to notify the authority that her mother had begun living with her, Rivas sought review in the Superior Court.[1] On cross motions for judgment on the pleadings, the judge directed entry of judgment in favor of the authority. Rivas appeals, and we affirm.

*Background.* The record of agency proceedings, supplemented by deposition testimony conducted with leave by a judge, discloses the following. Rivas has received housing assistance from the MRVP since 1998.[2] Among many conditions, MRVP participants must notify the authority within thirty days of "changes in household income and/or household composition."[3]

Rivas's mother, Ana Burgos, who formerly had rented an apartment from the authority before moving to Virginia, returned to Chelsea from Virginia in early 2008. Upon her return, Burgos lived for at least two weeks of every month with Rivas.[4] On May 5, 2009, Burgos filed an application for housing with the

---

[1]Rivas's complaint sought review in the nature of certiorari pursuant to G. L. c. 249, § 4, and under G. L. c. 30A, § 14. Rivas's appeal does not challenge the dismissal of her request for review in the nature of certiorari.

[2]The MRVP involves block grants from the Massachusetts Department of Housing and Community Development to local organizations like the authority. The tenant pays a fixed percentage of household income toward rent, and the local organization pays the landlord the difference between the tenant's fixed percentage of income payment and the market rent.

[3]Under 760 Code Mass. Regs. § 5.03 (2003), a "household" includes "two or more persons who live or will live regularly in a unit as their primary residence: (1) whose income and resources are available to meet the household's needs; and (2) who are either related by blood, marriage, or operation of law, or who have otherwise evidenced a stable inter-dependent relationship." The same definition also provides that "[a] household member shall be considered to be living regularly with a family if temporarily absent for reasons such as hospitalization, duty assignment, employment, or school attendance in another location," and that "[i]n the event that a household member, who has signed the lease, applies for the addition of a person, who meets the criteria . . . as an additional household member, the [authority] shall determine whether the person is qualified and whether the augmented family is eligible [under applicable income guidelines]." The foregoing provisions are incorporated by reference into the regulations governing the MRVP, under 760 Code Mass. Regs. § 49.03(3) (2000).

[4]There was conflicting evidence before the grievance panel concerning the extent to which Burgos lived with Rivas. Burgos testified that she spent two

authority.[5] That application, along with additional supporting documents, listed Burgos's address as Rivas's apartment.[6]

By letter dated July 9, 2009, the authority notified Rivas that it was terminating her rental voucher, effective August 31, 2009. The letter asserted that Rivas had breached her obligation to report changes in household composition or income within thirty days.[7] The letter also notified Rivas of her right to submit a written request for a grievance hearing within seven days following her receipt of the termination notice. See 760 Code Mass. Regs. § 6.08(4)(a) (1998). By letter dated July 14, 2009, Rivas timely requested a grievance hearing. The authority did not thereafter invite Rivas to discuss her grievance informally in an attempt to settle the grievance without the necessity of a grievance hearing, as contemplated by 760 Code Mass. Regs. § 6.08(4)(b) (1998).[8] By letter dated July 30, 2009, the authority notified Rivas that a grievance hearing had been scheduled for August 12, 2009, at 1:00 P.M.

---

weeks with Rivas and two weeks with her other daughters, and Rivas submitted letters from various friends and neighbors asserting that she did not live regularly with Rivas. However, the evidence also included various documents listing Rivas's apartment as Burgos's address, including a Social Security benefits statement, a Verizon telephone bill, a credit report, items of mail addressed to her at Rivas's address, and a bank statement.

[5]Burgos and Rivas assert that Burgos previously applied for such housing in June of 2008, but the authority had no record of such an application. The possibility that Burgos might have submitted such an application is immaterial to the issues in this appeal.

[6]Among the supporting documents was an affidavit by Rivas, dated June 16, 2009, and stating that "Ana Burgos lived with me at 12 Fourth St #4 Chelsea from July 2008 to the present."

[7]The obligation, as stated in § 3(A)(1) of the MRVP voucher, is as follows: "The Voucher Holder must at a minimum: Report changes in household income and/or household composition to the [authority] within 30 days of the change. If such changes alter the authorized unit size or rent share payment an amendment to the terms of this Voucher document will be executed." See 760 Code Mass. Regs. § 49.05(8)(b)(3) (2000) ("Participants shall inform the [authority] of all changes in household size and/or composition within 30 days of such changes").

[8]Title 760 Code Mass. Regs. § 6.08(4)(b) provides as follows:

"Promptly after the initiation of a grievance, unless otherwise provided, the [authority's] executive director or his or her designee shall give the grievant the opportunity to discuss the grievance informally in an attempt to settle the grievance without the necessity of a grievance hearing. The [authority] shall give reasonable advance notice to the grievant and

Rivas, represented by counsel, presented evidence at the August 12 hearing before the authority's grievance panel. The panel affirmed the authority's decision, citing "overwhelming evidence" in the form of testimony at the hearing and documents submitted by the authority, of Rivas's failure to report changes in household composition. The authority notified Rivas of the panel's decision by letter dated August 14, 2009. Rivas thereafter sought further review before the authority's board of commissioners (board). See 760 Code Mass. Regs. § 6.08(4)(h) (1998).

Rivas, again represented by counsel, presented evidence before the board at a hearing held on September 16, 2009. When the hearing before the board concluded, Rivas and her lawyer left the room. After Rivas and her counsel had gone, a representative of the authority submitted the documentary evidence it previously had submitted to the grievance panel. While the board deliberated, at least two authority employees were present. At least one of these employees appears to have answered questions from the board about the regulations governing the MRVP. Following the hearing and its deliberations, the board voted to uphold the grievance panel's decision; the board's chairman notified Rivas of its decision by letter dated October 2, 2009.

As observed in the introduction, Rivas then sought review of the authority's decision in the Superior Court, and following expansion of the record and entry of judgment on the pleadings in favor of the authority, Rivas appealed.

On appeal, Rivas argues that (1) the proceedings before the panel and the board violated statutory and regulatory procedures and deprived her of due process rights; (2) the judge applied an improper standard of review to the authority's decision; (3) the applicable regulations are unconstitutionally vague; and (4) the judge erroneously interpreted the lease agreement between Rivas and the authority.

*Discussion.* 1. *Standard of review.* We review de novo a decision on a motion for judgment on the pleadings pursuant to

his or her representative (if any) of a time and place for an informal settlement conference, unless such a conference shall have taken place when the grievance was delivered to the [authority]. If a matter is not resolved at the informal settlement conference, a grievance hearing shall be held. Failure to attend an informal settlement conference shall not affect a grievant's right to a grievance hearing."

Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974). *Wheatley* v. *Massachusetts Insurers Insolvency Fund*, 456 Mass. 594, 600 (2010). We will uphold an agency decision challenged under G. L. c. 30A, § 14, unless, inter alia, "the substantial rights of any party may have been prejudiced because the agency decision is . . . [m]ade upon unlawful procedure." G. L. c. 30A, § 14(7)(*d*), as amended by St. 1973, c. 1114, § 3. With that standard in mind, we turn to Rivas's several claims of error.

2. *Failure to conduct settlement conference.* Rivas first contends that the termination of her voucher should be set aside because the authority did not conduct an informal settlement conference with her prior to the formal hearing before the grievance panel, as directed by 760 Code Mass. Regs. § 6.08(4)(b). See note 8, *supra.*

As a threshold matter, we observe that, though represented by counsel at both the hearing before the grievance panel and the hearing before the board of commissioners, Rivas neither requested an informal settlement conference nor assigned error to the authority's failure to schedule or conduct one; instead she proceeded without objection through both administrative adjudicatory hearings on the merits and, following adverse determinations in those proceedings, first asserted her claim of procedural error in her appeal to the Superior Court. The claim is accordingly waived.[9] See *McCormick* v. *Labor Relations Commn.*, 412 Mass. 164, 169-170 (1992), and cases cited. See also *Secretary of Admin. & Fin.* v. *Commonwealth Employment Relations Bd.*, 74 Mass. App. Ct. 91, 95 (2009) ("Review pursuant to G. L. c. 30A is not the time to insert new issues into the case").[10]

---

[9]Our dissenting colleague suggests, without supporting authority, that the claim should not be treated as waived, because the authority did not notify Rivas of her right to an informal settlement conference. However, the claimed right is contained in published regulations, and Rivas was represented by counsel at both agency hearings.

[10]Separately, the dissent suggests that the authority has waived any entitlement to a waiver defense. See *Niles* v. *Boston Rent Control Administrator*, 6 Mass. App. Ct. 135, 151-152 (1978). However, the authority has not sought on appeal to invoke a waiver argument. Our reference to Rivas's failure to preserve her rights by seasonable objection before the authority is based not on any request by the authority, but instead on the well established principle that a party in a civil dispute may not seek review on appeal of an issue not raised below at the first opportunity.

Rivas would fare no better were we to consider her claim on its merits. Rivas's claim is rooted in a deprivation of her right to due process. Though we reject the authority's contention that due process is not implicated because Rivas has no property interest in her MRVP voucher, see *Madera* v. *Secretary of the Executive Office of Communities & Dev.*, 418 Mass. 452, 462 (1994), the two hearings Rivas was afforded were adequate to satisfy the requirements of due process. See *id.* at 463, quoting from *General Chem. Corp.* v. *Department of Envtl. Quality Engr.*, 19 Mass. App. Ct. 287, 293 (1985) ("If due process requires *any* type of hearing, G. L. c. 30A, § 1[1], mandates that the [agency] conduct an 'adjudicatory proceeding' in accordance with G. L. c. 30A, §§ 10, 11" [emphasis in original]). The lone authority cited by Rivas to support her claim of a due process violation in this regard is inapposite: *Wojcik* v. *Lynn Hous. Authy.*, 66 Mass. App. Ct. 103, 109-111 (2006), involved an informal adjudicatory hearing before a hearing officer, rather than an informal settlement conference, and the issue in the case was the authority of the Lynn Housing Authority, under applicable Federal regulations, to disregard the decision of the hearing officer.[11] Finally, there is no showing on this record that Rivas suffered any prejudice by reason of the failure to conduct an informal settlement conference; any contention to the contrary rests on nothing more than speculation. See *RicMer Properties, Inc.* v. *Board of Health of Revere*, 59 Mass. App. Ct. 173, 179 (2003). We see no purpose in vacating the authority's decision terminating Rivas's voucher, following two adjudicatory hearings on the merits, so that the parties may engage in an informal settlement conference that Rivas did not request (and the omis-

---

[11]The additional authorities offered by our dissenting colleague to extend relief to Rivas on an alternative theory (albeit one not raised or argued by Rivas) likewise furnish no cause to disturb the judgment. In *DaLomba's Case*, 352 Mass. 598, 603-604 (1967), the agency refused to allow the insurer to present rebuttal medical evidence in response to additional evidence presented by the employee on recommittal, in violation of the agency's regulations, causing clear prejudice to the insurer. In contrast, the court did not disturb the agency decision in *Martorano* v. *Department of Pub. Utils.*, 401 Mass. 257, 262-263 (1987), because it concluded that the agency's violation of procedural rules did not cause the plaintiff substantial prejudice. To the same effect is the remaining authority cited by the dissent, *RicMer Properties, Inc.* v. *Board of Health of Revere*, 59 Mass. App. Ct. 173, 177 (2003), in which we affirmed the agency decision despite procedural defects claimed by the plaintiff.

sion of which Rivas did not protest, prior to the commencement of those hearings), in circumstances in which it is doubtful in the extreme that the authority will agree to overlook Rivas's prolonged violation of the conditions of her MRVP voucher.

3. *Ex parte communication.* Rivas also contends that the board violated her right to due process by entertaining ex parte communication from representatives of the authority, outside her presence, following the hearing but before its decision, on review of the decision of the grievance panel. Specifically, Rivas contends that the conduct of the hearing before the board violated her right to cross-examine witnesses, see G. L. c. 30A, § 11(3), and to receive notice of, and an opportunity to respond to, any material considered by the board under principles applicable to judicial notice, see G. L. c. 30A, § 11(5). In response, the authority suggests that those procedural protections are inapplicable to the hearing before the board, by reason of the provisions of G. L. c. 30A, § 10.[12] Contrary to Rivas's claims, however, though Rivas was allowed to present new evidence to the board beyond the material she presented to the grievance panel, the authority was not allowed to present new evidence to the board outside her presence. Instead, the authority submitted only the same documentation that was presented at the hearing before the grievance panel. Accordingly, there was no testimony implicating a right of cross-examination, nor any evidence the board considered under principles of judicial notice.[13]

4. *Adequacy of agency's decision.* There is likewise no merit

---

[12]Specifically, the authority points to the third paragraph of that section:

> "When a party has the opportunity to obtain an agency hearing, followed by one or more appeals before the same agency or before different agencies, such appeals being limited to the record made at the hearing, the appeal procedure need not comply with any requirement of this chapter for the conduct of adjudicatory proceedings except paragraphs (7) and (8) of section eleven."

G. L. c. 30A, § 10, as amended by St. 1978, c. 60, § 1.

[13]To the extent authority representatives may have offered comment concerning proper interpretation of the applicable regulations, it constituted legal argument rather than evidence, and Rivas's counsel had already amply furnished argument in favor of her suggested interpretation of the same regulations. Rivas cites no regulation entitling her to be furnished an opportunity to submit rebuttal argument following argument by her opposing party.

to Rivas's contention that the decision of the grievance panel lacked sufficient detail in its findings and conclusions to comply with law. An agency need not make findings on every contested issue of fact or law so long as it adequately indicates the basis for the decision to permit appellate review. See *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins.*, 408 Mass. 363, 374 (1990). In the present case, the decision of the grievance panel explained that the basis of its decision to uphold termination of Rivas's MRVP voucher was as follows:

> "Failure to report changes in family composition and in family's income. Overwhelming evidence in support of this was presented at the hearing, as well as testimony and documentation submitted by [authority] staff from both the Leased Housing Department and Tenant Selection Department."

From that explanation, it is apparent that the panel, on the basis of the evidence before it, concluded that Burgos had lived regularly in Rivas's apartment, and that Rivas failed to report that change in her household composition as required by the regulations. There was substantial evidence before the grievance panel to support that conclusion.

5. *Ambiguity of regulations.* Finally, we reject Rivas's contention that the regulations were inadequately clear to permit termination of Rivas's voucher, based on her mother's residence in her apartment for two weeks out of each of the eleven months preceding the termination. As Rivas observes, "regularly" is not defined in the regulations applicable to the MRVP voucher program. However, the acknowledged scope of Burgos's occupancy of Rivas's apartment was sufficient to satisfy rather easily any reasonable conception of regular occupancy. Moreover, the MRVP regulations incorporate by reference the definition of "household" set forth in the regulations governing eligibility and selection criteria for prospective tenants of public housing. See note 3, *supra.* Under the regulations applicable to public housing tenants as part of the same regulatory scheme, occupancy of public housing apartment units is limited to approved household members, excepting guests. The stay of any overnight "guest" is limited to no more than a total of twenty-one nights during any

consecutive twelve-month period. See 760 Code Mass. Regs. § 6.06(3)(c) (2003). We defer to the reasonable construction of regulations by an administrative agency charged with their administration. See *Pulsone* v. *Public Employment Retirement Admin. Commn.*, 60 Mass. App. Ct. 791, 794 (2004). Moreover, where regulations apply to related matters under a common regulatory scheme, we look to the manner in which they are applied in other parts of the same regulatory scheme in order to assign consistent meaning to the terms. See *Costa* v. *Fall River Hous. Authy.*, 71 Mass. App. Ct. 269, 277 (2008), *S.C.*, 453 Mass. 614 (2009). As applied to the facts of the present case, the authority's conclusion that occupancy of an apartment for two weeks out of every month for eleven consecutive months constitutes "living regularly" in the apartment within the meaning of the applicable regulations fits comfortably within the deference we extend to the authority in matters of interpretation. We discern no error of law or constitutional violation in the authority's conclusion that Burgos was living regularly in Rivas's unit, and that Rivas's failure to report that fact to the authority constituted a violation of the terms of her MRVP voucher, justifying its termination.

*Judgment affirmed.*

Mills, J. (dissenting). By regulation, 760 Code Mass. Regs. § 6.08(4)(b) (1998), the Chelsea Housing Authority (authority) was required to notify Rivas of her right to an informal settlement conference and to conduct such a conference prior to formal grievance proceedings. Because, in the absence of such a conference, the authority's decision was made upon unlawful procedure, and because I conclude that this unlawful procedure prejudiced her substantial rights, I would reverse the judgment and remand for further proceedings. Accordingly, I respectfully dissent.

1. *Unlawful procedure. a. Waiver.* The majority first dismisses Rivas's claim to a right to the notice and process of an informal settlement conference on the grounds of waiver. Of course, the well-established typical rule is that "[a] party is not entitled to raise arguments on appeal that he could have raised, but did not

raise, before the administrative agency." *Foxboro Harness, Inc.* v. *State Racing Commn.*, 42 Mass. App. Ct. 82, 85 (1997), quoting from *Albert* v. *Municipal Ct. of Boston*, 388 Mass. 491, 493 (1983).

But waiver is, itself, waivable. *Niles* v. *Boston Rent Control Administrator*, 6 Mass. App. Ct. 135, 151-152 (1978). Where a party seeks to argue that an opponent's claim is waived because it was not presented to the administrative agency, it must preserve its waiver argument by raising it in Superior Court on G. L. c. 30A review. *Gordon* v. *State Bldg. Code Appeals Bd.*, 70 Mass. App. Ct. 12, 16-17 (2007).

Here, the authority defended Rivas's G. L. c. 30A complaint in Superior Court on the merits. The authority did not raise a waiver defense to Rivas's claim that the agency proceedings were defective without the informal settlement conference and that this defect warranted reversal. The authority also did not raise waiver before this court. The authority has therefore waived any waiver defense it might assert on appeal.[1]

b. *Merits.* I conclude that the applicable regulations mandate that the authority both notify grievants of their right to an informal settlement conference and conduct such a conference. Because the regulations afford the authority no discretion in this matter, the absence of notice and of the conference itself made the authority's procedure here unlawful.

Preliminarily, I respectfully do not share the majority's view that Rivas only cast her argument on this point in due process terms. By pointing to the regulations' nondiscretionary requirements of the informal settlement conference, she has sufficiently raised the issue of the lawfulness of a procedure that lacks compliance with the regulations. The Administrative Procedure Act (APA), codified in G. L. c. 30A, and any applicable specific regulations, such as those found in 760 Code Mass. Regs. § 6.08(4)(b), set forth more expansive procedural protections than those required by the due process clauses of the Constitu-

---

[1]Even absent the authority's waiver of a potential waiver defense, I would still hold that Rivas could, for the first time in the G. L. c. 30A proceedings, raise her claim based on the absence of the informal settlement conference. Because Rivas never received notice of her right to such a conference, I would not conclude that she could fairly be held to have waived this right.

tions of Massachusetts and the United States. A procedural violation of the APA or 760 Code Mass. Regs. § 6.08(4)(b) is unlawful just the same as a constitutional due process violation.

Specifically, rules and procedures mandated by regulation have the force of law. *Royce* v. *Commissioner of Correction*, 390 Mass. 425, 427 (1983). "And whereas [such rules] may be properly revoked or amended, they may not be arbitrarily disregarded." *DaLomba's Case*, 352 Mass. 598, 603 (1967). It follows that a court may set aside an agency decision, pursuant to G. L. c. 30A, § 14(7)(*d*), if the agency, in reaching the decision, failed to comply with procedures mandated by regulation. See *id.* at 603-604; *Martorano* v. *Department of Pub. Utils.*, 401 Mass. 257, 262 (1987); *RicMer Properties, Inc.* v. *Board of Health of Revere*, 59 Mass. App. Ct. 173, 177 (2003).

It is undisputed that the applicable regulations require an opportunity for, and advance notice of, an informal settlement conference as part of the authority's grievance procedure.[2] 760 Code Mass. Regs. § 6.08(4)(b). The authority may not arbitrarily disregard this procedural requirement.[3] See *DaLomba's Case*, 352 Mass. at 603. Because it did so here, the grievance procedure followed by the authority in Rivas's adjudication was unlawful. See G. L. c. 30A, § 14(7)(*d*).

c. *Prejudice.* The majority finally disposes of Rivas's claim on the grounds that she suffered no prejudice. I agree that "[t]here must be some showing of prejudice before an agency's disregard of its rules may constitute reversible error." *Martorano*, 401 Mass. at 262. I believe such a showing has been made here.

First, in light of the "well-established public policy favoring

---

[2]By regulation, housing authorities participating in the Massachusetts Rental Voucher Program (MRVP) must create, and communicate to those receiving MRVP benefits, a grievance procedure. See 760 Code Mass. Regs. § 6.02(2) (2003); 760 Code Mass. Regs. § 6.08(3) (1998). This procedure must materially comply with the grievance procedure envisioned by 760 Code Mass. Regs. § 6.08(4).

[3]Of course, if the authority wishes to eliminate the informal settlement conference from its grievance procedure, the regulations permit it to do so. See 760 Code Mass. Regs. § 6.08(4) (*"unless otherwise provided*, [the authority's] executive director or his or her designee shall [hold an informal settlement conference]") (emphasis added). I would require the authority to follow this procedure instead of eliminating the informal settlement conference from its grievance procedure unilaterally and off the record.

the private settlement of disputes," *Cabot Corp. v. AVX Corp.*, 448 Mass. 629, 638 (2007), and in light of my own experience with the invaluable nature of informal settlement proceedings, it seems clear to me that an informal settlement conference would have been of great value in these proceedings. At bottom line, arbitration, mediation, and pretrial conferences (in both civil and criminal cases) are an integral part of functioning conflict resolution systems. All are settlement conferences with varying degrees of formality. It does not require speculation to conclude that the absence of such opportunities for discussion and compromise prejudices substantial rights. I therefore conclude that this unlawful procedure prejudiced Rivas's rights.

Second, although perhaps accurate to note that the result may not change on remand due to the authority's unwillingness to compromise, the regulations prohibit such intransigence. Cf. *Boston Hous. Authy. v. Bridgewaters*, 452 Mass. 833, 843-844 (2009) ("[The authority] cannot satisfy its requirement . . . by summarily concluding, . . . '[F]rankly your Honor we're not interested in preserving this tenancy.' The [applicable] regulations . . . and the [authority's] own policies demand a more stringent inquiry"). Where agencies like the authority are required to make a good faith effort to discuss grievances in an attempt to settle them before commencing formal proceedings, it demonstrates, to me, a clear intent to require at least a good faith attempt to compromise. Because the authority does not appear to have honored this intent in its termination of Rivas's voucher, I would conclude that it has prejudiced Rivas's rights by not following the mandated procedure.

I therefore conclude that the result of the proceedings before the authority should not stand and that the matter should be remanded for further proceedings, beginning with the good faith, informal settlement conference mandated by the regulations.

2. *Ex parte communication.* I agree with the majority's conclusion that the ex parte communication between members of the board and representatives of the authority does not independently warrant Rivas's requested relief. I add this additional comment to note that the authority's decision to present ex parte argument, and the board's decision to accept it, merits this court's criticism.

Ex parte communication of this type, when taking place in

the context of an agency responsible both for enforcement and for adjudication, most often does not offend constitutional due process. See, e.g., *Kippenberger* v. *Board of Registration in Veterinary Med.*, 448 Mass. 1035, 1036 (2007), and cases cited. Nor does the APA expressly bar such contact. See G. L. c. 30A, §§ 10-11, 14(7). I am therefore constrained to concur with the majority in denying relief on this basis.

But despite its constitutional and statutory permissibility, I regard the practice followed by the authority and the board here to be antithetical to the appearance of impartiality that citizens must demand from their public agencies and officers. Ex parte communication, however innocuous or, strictly speaking, legal in nature, gives the impression of prejudgment and bias. This concern grows when the communication is oral, leaving no record, denying the aggrieved party an opportunity to respond, see *Duro* v. *Duro*, 392 Mass. 574, 580 (1984), and frustrating any attempt to determine prejudicial effect. Compare *Boston Edison Co.* v. *Boston Redev. Authy.*, 376 Mass. 151, 154-155 (1978). This concern becomes critical when the adjudication involves access to public housing for a family of limited means "who may have nowhere else to turn." *Spence* v. *Gormley*, 387 Mass. 258, 275 (1982). In this context, I believe that a closed-door meeting where agency enforcement personnel present unrecorded, unrebutted argument to a decision-making body cannot give a newly homeless ex-tenant confidence that she has received a fair shake.

In formal litigation, ex parte communication, intending that the judge rely on the information relayed, is "unacceptable . . . . It is contrary to the basic rules of fairness governing litigation under our adversary system, and it is not to be countenanced regardless of any rule of court on the subject." *Olsson* v. *Waite*, 373 Mass. 517, 533 (1977). An administrative hearing is not formal litigation, and I agree that the ex parte communication here violates neither the constitutions nor the APA. But, "looking only to practicalities, the board [would be] well advised" not to permit this sort of lapse. *Yerardi's Moody Street Restaurant & Lounge, Inc.* v. *Board of Selectmen of Randolph*, 19 Mass. App. Ct. 296, 302 (1985).