ELIZABETH RIVAS *vs.* CHELSEA HOUSING AUTHORITY.

Suffolk. October 2, 2012. - February 8, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Housing Authority. Municipal Corporations,* Housing authority. *Administrative Law,* Hearing, Regulations. *Due Process of Law,* Hearing, Housing, Vagueness of regulation. *Housing.*

Discussion of the standard applied to the review of a decision of a local housing authority and the deference due its interpretations of regulations promulgated by the Department of Housing and Community Development. [333-335]

In an appeal from a decision of a local housing authority (authority), the plaintiff, a former participant in the Massachusetts rental voucher program, was entitled to raise an argument that she had failed to raise before the authority (namely, that the termination of her voucher violated due process principles because the authority did not conduct an informal settlement conference with her prior to the formal hearing), where the authority defended the claim on its merits and failed to raise a waiver defense below; and where, at any rate, the issue was of sufficient public policy import to merit this court's attention. [335-337]

In an action brought in Superior Court by a plaintiff who sought review of the decision of a local housing authority (authority) terminating her participation in the Massachusetts rental voucher program based on her failure to notify the authority of a change in household composition and income, the judge erred in entering judgment in favor of the authority, where, although nothing in the record indicated that the ex parte presentation of evidence to the authority's board of commissioners created any unfairness [344-345], the authority failed to provide the plaintiff with an informal settlement conference [337-339]; the regulations at issue were, at least as applied, impermissibly vague [339-342]; and the findings of the authority's grievance panel failed to make clear how the panel defined "household member" [343-344].

CIVIL ACTION commenced in the Superior Court Department on November 2, 2009.

The case was heard by *Nancy S. Holtz,* J., on motions for judgment on the pleadings.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Joshua N. Garick* (*Stephen J. Callahan* with him) for the plaintiff.

*Thomas F. Feeney* for the defendant.

*James M. McCreight*, for Massachusetts Union of Public Housing Tenants, amicus curiae, submitted a brief.

CORDY, J. Elizabeth Rivas has received housing assistance through the Massachusetts rental voucher program (voucher program) since 1998. The voucher program is a State-funded program that provides rental assistance to low-income tenants who lease apartments from private landlords. The voucher program participants contribute a percentage of their household net income toward rent, and the State pays the remainder of the rent directly to the landlord. The program is administered by the Department of Housing and Community Development (department)[1] through local housing authorities, and is governed by 760 Code Mass. Regs. §§ 49.00 (2012).

Rivas rented an apartment in the city of Chelsea and received her voucher through the Chelsea Housing Authority (authority). Rivas's voucher was considered a "project-based" voucher, meaning it could only be used to subsidize her rent at a particular housing unit: 12 Fourth Street, Apartment 4, Chelsea. See 760 Code Mass. Regs. § 49.02 (1998) (definition of project-based voucher); 760 Code Mass. Regs. § 49.06 (2000) (project-based voucher requirements). On July 9, 2009, Rivas received notice from the authority's voucher program representative, Carmen Torres, that the authority was terminating her voucher, effective August 31, 2009, because she did not report "changes in family composition and in family's income" within thirty days of the change, as required by the conditions of her voucher. The notice informed Rivas of her right to request a grievance hearing pursuant to 760 Code Mass. Regs. § 6.08(4)(a) (1998).[2]

Specifically, the authority alleged that Rivas had failed to

---

[1]The Department of Housing and Community Development (department) was known as the Executive Office of Communities and Development prior to the enactment of St. 1996, c. 204, § 16. For the sake of clarity, we refer to both the current and predecessor agencies as "department" throughout this opinion.

[2]Title 760 Code Mass. Regs. § 49.11 (2012) adopts for use in conjunction with the voucher program the grievance procedures for State public housing programs set forth in 760 Code Mass. Regs. § 6.08 (1998).

report to the authority that her mother, Ana Burgos, had begun to live with her at 12 Fourth Street, Apartment 4. Burgos, who had formerly rented an apartment from the authority before moving to Virginia, returned to Chelsea from Virginia in early 2008. On her return, she spent at least two weeks of every month living with Rivas, and spent the remaining two weeks living with her other daughters.[3] On May 5, 2009, Burgos applied for her own housing with the authority.[4] That application, along with additional supporting documentation, listed Burgos's current address as Rivas's apartment. See note 3, *supra*. The decision to revoke Rivas's voucher was reportedly premised on the information provided in Burgos's application.

Rivas timely requested a hearing before the authority's grievance panel. By letter dated July 30, 2009, the authority notified Rivas that a grievance hearing had been scheduled for August 12, 2009. At no point did the authority offer Rivas the opportunity to engage in an informal settlement conference prior

[3]There was conflicting evidence before the grievance panel of the Chelsea Housing Authority (authority) concerning the extent to which Ana Burgos lived with Elizabeth Rivas. Rivas asserted to the authority and throughout this appeal that Burgos did not reside with her but, rather, split her time between Rivas's apartment and Burgos's other daughters' apartments, staying with Rivas no more than two weeks per month. Rivas submitted letters from various friends and neighbors in support of this assertion. However, the authority introduced a number of documents that identified Rivas's apartment as Burgos's permanent address, including a Social Security benefits statement, a telephone bill, a credit report, a bank statement, and other items of mail addressed to Burgos at Rivas's apartment.

The authority also introduced a notarized letter from Rivas, dated June 16, 2009, that accompanied a housing application Burgos had filed, stating: "Ana Burgos lived with me at 12 Fourth St # 4 Chelsea from July 2008 to the present." Rivas's purpose in writing the letter was to help Burgos comply with the application's requirement of providing a five-year history of prior residences. In response to the letter's admission, Rivas testified that she had previously submitted a letter stating that Burgos lived with her on a temporary basis for two weeks per month, but the authority refused to accept it because it was not notarized. The authority's resident selector conceded this fact. Having rejected the first letter, the resident selector directed Burgos to submit a notarized letter using template language that omitted the detail about Burgos spending only two weeks per month with Rivas and, instead, made a blanket statement that Burgos lived with Rivas from July, 2008, through June, 2009. Rivas submitted a new letter in accordance with that template.

[4]Rivas asserts that Burgos first applied for housing in June, 2008, but the authority has no record of such an application.

to the grievance hearing, as required by 760 Code Mass. Regs. § 6.08(4)(b) (1998). Rivas, represented by counsel, presented evidence at the August 12 hearing. The authority's grievance panel upheld the termination.

Pursuant to 760 Code Mass. Regs. § 6.08(4)(h) (1998), Rivas appealed to the authority's board of commissioners (board). Rivas presented evidence before the board at a hearing held on September 16, 2009. After Rivas had presented her case to the board and had left the room with her attorney, Torres entered and provided the board with a package of documentary evidence that she had previously presented at the grievance panel hearing. Torres then answered questions from the board regarding both the regulations governing the voucher program and the contents of the evidence package.[5] Following the hearing, the board affirmed the grievance panel's decision.

Rivas sought review of the authority's decision in the Superior Court.[6] The Superior Court judge granted leave to expand the record to include the depositions of Torres and then executive director of the authority, Michael McLaughlin, who had been present at the board hearing. On cross motions for judgment on the pleadings, the judge directed entry of judgment in favor of the authority and dismissed Rivas's complaint. The Appeals Court affirmed the judgment of the Superior Court in a two-to-one decision. *Rivas* v. *Chelsea Hous. Auth.*, 80 Mass. App. Ct. 294 (2011) (*Rivas*). We granted Rivas's application for further appellate review and now reverse.[7]

On appeal, Rivas argues that (1) the Superior Court judge improperly deferred to the authority's interpretation of the voucher program regulations; (2) she was prejudiced by the authority's unlawful failure to conduct an informal settlement

---

[5]Carmen Torres, the authority's voucher program representative, stated in her deposition that the members of the authority's board of commissioners (board) were "not too familiar with the Mass. Voucher Program." Michael McLaughlin, who was the authority's executive director at the time, stated in his deposition that differences between housing programs "can be very confusing for people," and "by and large, [the board members] don't deal with that," so they "may be asking for clarifications."

[6]As discussed *infra,* Rivas's complaint sought review both under G. L. c. 30A, § 14, and in the nature of certiorari pursuant to G. L. c. 249, § 4.

[7]We acknowledge the amicus brief of the Massachusetts Union of Public Housing Tenants.

conference; (3) the applicable regulations are unconstitutionally vague; (4) the grievance panel's decision was premised on inadequate findings of fact and conclusions of law; and (5) the ex parte presentation of evidence to the board violated her due process rights.

1. *Standard of review.* There is some debate whether the authority's action is properly appealable under G. L. c. 30A, § 14, or in the nature of certiorari review pursuant to G. L. c. 249, § 4. Rivas's complaint in the Superior Court pleaded both causes of action, although Rivas acknowledges that G. L. c. 249, § 4, is only available for review of agency decisions not reviewable under G. L. c. 30A, § 14, or by other means. See *State Bd. of Retirement* v. *Bulger*, 446 Mass. 169, 173 (2006). The Appeals Court treated the matter as the challenge of an agency decision under G. L. c. 30A, § 14, and applied the corresponding standard of review.[8] *Rivas, supra* at 297-298. However, it is not clear that G. L. c. 30A, § 14, was the proper avenue for review of the authority's decision. The Appeals Court has previously held that because a local housing authority, organized pursuant to G. L. c. 121B, § 3, is not an "agency" within the meaning of G. L. c. 30A, § 1, but is instead a "public body, analogous in various respects . . . to a municipal corporation," review of a housing authority's decision is unavailable under G. L. c. 30A, § 14. *Costa* v. *Fall River Hous. Auth.*, 71 Mass. App. Ct. 269, 274 n.6 (2008), *S.C.*, 453 Mass. 614 (2009), quoting *Finance Comm'n of Boston* v. *McGrath*, 343 Mass. 754, 763 (1962). See *Simmons* v. *Clerk-Magistrate of the Boston Div. of the Hous. Court Dep't*, 448 Mass. 57, 62 (2006) ("Nothing in [G. L. c. 121B, § 3,] indicates that [a housing authority] should be treated as a 'political subdivision' of the Commonwealth"); G. L. c. 30A, § 1 (agency is "any department, board, commission, division or authority of the state government or subdivision of any of the foregoing"). But see *Madera* v. *Secretary of the Exec. Office of Communities & Dev.*, 418

---

[8]Because the Superior Court judge did not issue a written decision, it is uncertain which type of review she believed applied. Rivas apparently did not challenge before the Appeals Court the dismissal of her request for review in the nature of certiorari. (She would have had no reason to do so, as the Appeals Court was willing to treat the matter as a G. L. c. 30A, § 14, review.) *Rivas* v. *Chelsea Hous. Auth.*, 80 Mass. App. Ct. 294, 295 n.1 (2011).

Mass. 452, 465 (1994) (as State agency, department must conduct hearing that complies with provisions of G. L. c. 30A when it adjudicates appeals from local housing authorities).

As a practical matter, the Superior Court apparently regularly hears appeals from local housing authorities pursuant to G. L. c. 30A, § 14, including appeals from the decisions of the authority. See Heinonen vs. Chelsea Hous. Auth., Suffolk Superior Ct., No. 09-2103-A (Dec. 17, 2009) (reviewing authority decision pursuant to G. L. c. 30A, § 14); Huezo vs. Chelsea Hous. Auth., Suffolk Superior Ct., No. 07-4148-C (Sept. 11, 2008) (same); Galeas vs. Chelsea Hous. Auth., Suffolk Superior Ct., No. 035340F (Aug. 8, 2004) (same).

Although there appears to be some confusion over which type of review is proper, where, as here, the agency involved has regarded the matter as falling within the scope of G. L. c. 30A, our analysis of the merits of the case does not hinge on which form of review is properly applied. We reach this conclusion, at least in part, because the "standard of review for an action in the nature of certiorari depends on 'the nature of the action sought to be reviewed.' " *Black Rose, Inc.* v. *Boston*, 433 Mass. 501, 503 (2001), quoting *Boston Edison Co.* v. *Boston Redev. Auth.*, 374 Mass. 37, 49 (1977). See *Wightman* v. *Superintendent, Mass. Correctional Inst., Walpole*, 19 Mass. App. Ct. 442, 445 (1985) ("standard of judicial review under the certiorari statute takes its color from the nature of the administrative action that is being examined"). Thus, for the purposes of this appeal, we treat the matter as it has been treated throughout the appeal process, as a review of an agency decision under G. L. c. 30A, § 14.

We may set aside or modify an agency decision if we determine "that the substantial rights of any party may have been prejudiced" because the agency decision is in violation of constitutional provisions; in excess of statutory authority or jurisdiction of the agency; based on an error of law; made on unlawful procedure; unsupported by substantial evidence; unwarranted by the facts found by the court on the record as submitted or as amplified; or arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. G. L. c. 30A, § 14 (7). See *Attorney Gen.* v. *Commissioner of Ins.*, 450 Mass. 311, 318 (2008).

In reviewing the decision, we are required to "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14 (7). However, this deference is due to the " 'agency charged with *primary* responsibility' for administering a statute" (emphasis added). *Zoning Bd. of Appeals of Amesbury* v. *Housing Appeals Comm.*, 457 Mass. 748, 760 (2010), quoting *Goldberg* v. *Board of Health of Granby*, 444 Mass. 627, 633 (2005). See *Berrios* v. *Department of Pub. Welfare*, 411 Mass. 587, 595-596 (1992). This deference is afforded for the interpretation of "regulations promulgated by the administrative agency in question . . . pursuant to its statutory authority." *Zoning Bd. of Appeals of Amesbury* v. *Housing Appeals Comm.*, *supra* at 759 n.17. See *Hayes* v. *Retirement Bd. of Newton*, 425 Mass. 468, 470 (1997) (deference given to statutory interpretation of State agencies charged with administration of pension statute, not that of local retirement board).

In regard to the regulations governing the voucher program, it is the department, and not the authority, that is entitled to deference.[9] The department promulgates the rules of the voucher program; local housing authorities do not.[10] Compare G. L. c. 121B, § 26, with G. L. c. 23B, § 6 (rulemaking authority expressly delegated to department, not local housing authorities). The authority is therefore not entitled to deference in its interpretation of those rules. In any event, deference is not due, where, as here, the authority has applied a regulation with virtually no explanation of what conduct is and is not prohibited by that regulation.

*2. Failure to conduct informal settlement conference.* Rivas claims prejudicial error in the authority's failure to provide her the opportunity to engage in an informal settlement conference prior to the grievance panel hearing, as required by 760 Code

---

[9]The department declined to intervene in this action and has not formally stated its interpretation of the challenged regulation.

[10]Torres testified at her deposition that Rivas's grievance was "like the second grievance," suggesting voucher program grievances were rare. Torres further testified that she was not aware of the informal settlement conference requirement.

Mass. Regs. § 6.08(4)(b).[11] The authority concedes that Rivas should have been provided with such an opportunity, but argues that Rivas has failed to show prejudice resulting from the non-occurrence of the conference and, further, that Rivas waived this claim by not raising it before the grievance panel or the board.

We decline to treat the claim as waived, for substantially the same reasons outlined in the dissenting opinion in the Appeals Court case. See *Rivas, supra* at 302-303 (Mills, J., dissenting). We of course do not disturb the long-standing principle that arguments not made before an administrative agency generally cannot be raised on appeal. See *McCormick* v. *Labor Relations Comm'n*, 412 Mass. 164, 169-170 (1992), and cases cited; *Secretary of Admin. & Fin.* v. *Commonwealth Employment Relations Bd.*, 74 Mass. App. Ct. 91, 95 (2009) ("Review pursuant to G. L. c. 30A is not the time to insert new issues into the case"). However, in the circumstances of this case, it is appropriate to address Rivas's claim on the merits. First, the defense of waiver is itself waivable. See *Gordon* v. *State Bldg. Code Appeals Bd.*, 70 Mass. App. Ct. 12, 17 (2007); *Niles* v. *Boston Rent Control Adm'r*, 6 Mass. App. Ct. 135, 151-152 (1978). The authority did not argue waiver before either the Superior Court or the Appeals Court but, instead, defended solely on the merits. The Appeals Court considered Rivas's claim waived not on request of the authority, but on its own initiative. *Rivas, supra* at 298 n.10.

Even if the claim was waived, however, we consider the issue of informal settlement conferences in this context to be of

---

[11]Title 760 Code Mass. Regs. § 6.08(4)(b), adopted for application to the voucher program by 760 Code Mass. Regs. § 49.10 (2012), provides as follows: *"Promptly after the initiation of a grievance,* unless otherwise provided *the [authority's] executive director or his or her designee shall give the grievant the opportunity to discuss the grievance informally in an attempt to settle the grievance without the necessity of a grievance hearing.* The [authority] shall give reasonable advance notice to the grievant and his or her representative (if any) of a time and place for an informal settlement conference, unless such a conference shall have taken place when the grievance was delivered to [the authority]. If a matter is not resolved at the informal settlement conference, a grievance hearing shall be held. Failure to attend an informal settlement conference shall not affect a grievant's right to a grievance hearing." (Emphasis added.)

sufficient public policy import to merit our attention here. Although Rivas had counsel beginning at the grievance panel phase, most tenants do not.[12] The issue has been fully briefed by the parties and amicus curiae, and we exercise our discretion to consider it on the merits. See *Costa* v. *Fall River Hous. Auth.*, 453 Mass. 614, 621 n.11 (2009) (stating even if claim of unlawful procedure waived, "[i]n any event, the issues raised in this case concerning procedural requirements applicable to Section 8 termination appeal hearings are significant for public housing authorities and Section 8 participants throughout the Commonwealth" and "[w]e consider them on their merits"); *Cottam* v. *CVS Pharmacy*, 436 Mass. 316, 320 (2002) (court will review claim not properly preserved that has been fully briefed by parties and likely to arise in other cases); *Clark* v. *Rowe*, 428 Mass. 339, 341 (1998) (considering issue that presented matter of first impression despite failure to preserve).

The authority does not dispute that Rivas was entitled to an informal settlement conference, and that it failed to offer her that opportunity. Turning to the question whether Rivas has demonstrated prejudice, we again concur with the dissenting opinion in the Appeals Court case. *Rivas, supra* at 303-306 (Mills, J., dissenting). Naturally, "[t]here must be some showing of prejudice before an agency's disregard of its rules may constitute reversible error." *Martorano* v. *Department of Pub. Utils.*, 401 Mass. 257, 262 (1987). The authority contends, and the Appeals Court agreed, that Rivas cannot make such a showing here because notwithstanding the lack of a settlement conference, Rivas received two opportunities to present her case to the authority — before the grievance panel and before the board — and was unsuccessful on both occasions. *Rivas, supra* at 299-300. However, the question is not whether the constitutional

---

[12]In its amicus brief, the Massachusetts Union of Public Housing Tenants argues that, in addition to being unrepresented, "[m]any assisted tenants have linguistic and cognitive barriers and are trying to safeguard their families on very limited means. Legal representation, by itself, may not insure that all applicable rights are identified. There are a myriad of public and assisted housing programs, each with different rules, and advocates often have very limited time to research which program rules apply prior to a hearing. The expectation should be that since the [local housing authority] is administering the program and familiar with its rules, it should insure that proper procedures are followed."

requirements of due process were nonetheless satisfied, but whether the unlawfulness of the authority's procedure may have affected the outcome in this case. G. L. c. 30A, § 14 (7) (*d*) ("court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party *may* have been prejudiced because the agency decision is . . . [m]ade upon unlawful procedure" [emphasis added]).

In *Costa* v. *Fall River Hous. Auth.*, *supra* at 623 & n.13, we reversed and remanded the decision of a housing authority grievance panel where one of the five panel members potentially held bias against the grievant, concluding it was not harmless error because "it cannot be presumed that the other members voted independently [of the potentially biased member's] influence." Here, the potential prejudice arising from the denial of an opportunity for a settlement conference rises to a similar level. As the dissenting judge aptly pointed out in the decision of the Appeals Court, given the value of informal settlement proceedings in a variety of contexts, "[i]t does not require speculation to conclude that the absence of such opportunities for discussion and compromise prejudices substantial rights." *Rivas*, *supra* at 305 (Mills, J., dissenting). Cf. *Wojcik* v. *Lynn Hous. Auth.*, 66 Mass. App. Ct. 103, 109 (2006) (informal hearings are more than a mere courtesy and contemplate the due process rights of the tenant). The informal settlement conference is designed to give the tenant an opportunity to resolve the dispute before it becomes a formal grievance. It is focused on resolving the problem, not adjudicating the allegation. McLaughlin underscored the importance of informal settlement conferences in his deposition, noting that they provide an opportunity to determine not simply whether the tenant was in violation, but whether the tenant made a "mistake" and was "going to go on and be a good resident." Conversely, there is nothing in the record to indicate that any mitigating circumstances were considered by either the grievance panel or the board, or that Rivas was offered the opportunity to pay restitution in lieu of termination.[13] Whereas the settlement conference would have

---

[13]The grievance panel did refuse to address the issue, brought up by Torres, of the increased share of the rent Rivas would have owed after taking into

been conducted by Torres, who could have negotiated a settlement with Rivas, the grievance panel consisted of third parties focused on adjudication, not resolution.[14]

It was unquestionably unlawful for the authority to proceed to the grievance panel hearing without first offering Rivas the opportunity to engage in settlement negotiations, and the authority should not be allowed to defeat Rivas's claim of prejudice by demonstrating its unwillingness, at this stage in the proceedings, to reach a compromise on remand. Moreover, although Rivas concededly cannot prove that the outcome necessarily would have changed had she been provided with the conference, the law does not require her to make such a showing. G. L. c. 30A, § 14 (7) (*d*). See *Costa* v. *Fall River Hous. Auth., supra.* Admittedly, however, the question of prejudice presents a close call on the facts of this case. Ultimately, we hold only that, as long as the settlement conference requirement remains in effect, the authority may not arbitrarily disregard it to the prejudice of an individual's rights. See *DaLomba's Case*, 352 Mass. 598, 603-604 (1967). Given the other substantial errors apparent on the record, discussed *infra*, we need not decide whether the failure to provide the settlement conference alone requires reversal.

3. *Vagueness of applicable regulations.* Rivas argues that the regulations she was found to have violated are impermissibly vague as applied because they do not define what it means to live regularly within a unit and do not give a tenant notice of when a guest like Burgos becomes a household member, triggering the tenant's duty to inform the authority of a change in household composition and income. Rivas has a protected

_____

account the addition of Burgos's income, with a member stating, "That's a separate issue." It does not appear that Torres was attempting to propose a deal that would allow Rivas to pay restitution in lieu of having her voucher terminated, but regardless, the panel member's response indicates the panel's unwillingness to consider any issue beyond whether Rivas had violated the terms of her voucher.

[14]Title 760 Code Mass. Regs. § 6.08(4)(g) (1998) indicates that the panel shall order "whatever relief, if any, that shall be appropriate under the circumstances and under applicable laws, regulations, rules, and/or policies." However, as the previous footnote and the transcript of the hearing indicate, it appears the panel was solely focused on determining whether a violation had occurred. For his part, counsel for Rivas made no attempt to broker a compromise either.

property interest in her housing subsidy, and she is entitled to due process of law before the authority can terminate it. See *Carter* v. *Lynn Hous. Auth.*, 450 Mass. 626, 633 (2008) (protected property interest in federally funded Section 8 housing voucher); *Madera* v. *Secretary of the Exec. Office of Communities & Dev.*, 418 Mass. 452, 462 (1994) (protected property interest in State-funded public housing).

Section 3(A)(1) of Rivas's voucher program voucher states that the "Voucher Holder must at a minimum . . . [r]eport changes in household income and/or household composition to the [authority] within 30 days of the change. If such changes alter the authorized unit size or rent share payment an amendment to the terms of this Voucher document will be executed." The voucher program regulations promulgated by the department impose substantially the same requirements on voucher recipients as the corresponding terms found on the vouchers. See 760 Code Mass. Regs. § 49.05(8)(b)(2) (2000) ("Participants shall inform the [authority] of all increases in monthly income of the household of 10% or more within 30 days of such changes"); 760 Code Mass. Regs. § 49.05(8)(b)(3) (2000) ("participants shall inform the [authority] of all changes in household size and/or composition within 30 days of such changes").

The problem is that there is no applicable regulation defining and governing when an overnight guest becomes a household member for purposes of the voucher program. Title 760 Code Mass. Regs. § 5.03 (2003), incorporated by reference into the voucher program regulations by 760 Code Mass. Regs. § 49.03(3) (2012), defines "household" as:

> "(a) two or more persons who live or will live regularly in a unit as their primary residence:

> "1. whose income and resources are available to meet the household's needs; and

> "2. who are either related by blood, marriage, or operation of law, or who have otherwise evidenced a stable interdependent relationship."

"Primary residence" is defined as "principal home (domicile)

occupied by all members of a household not less than nine months of the year." 760 Code Mass. Regs. § 5.03. Section 49.02, the definitions section applicable to the voucher program, further incorporates by reference definitions in 760 Code Mass. Regs. §§ 4.00 (2005), 760 Code Mass. Regs. §§ 5.00 (2012), and 760 Code Mass. Regs. §§ 6.00 (1998). Each of those sections has its own "definitions" subsection, but none defines what it means to "live regularly" in a unit or the distinction between guest and household member. Another department regulation, 760 Code Mass. Regs. § 6.06(3)(c) (2003), specifically limits overnight guest stays to twenty-one nights during any twelve-month period, but the applicability of this provision is limited to various public housing programs, not including the voucher program. Title 760 Code Mass. Regs. § 6.02 (2003), which governs the applicability of occupancy provisions to the various public housing programs, is silent concerning the application of 760 Code Mass. Regs. § 6.06(3)(c) to the voucher program, but specifically states that *"760 [Code Mass. Regs. §] 6.08 [(1998)] applies to participants in the Massachusetts Rental Voucher Program"* (emphasis added). When read in context, there is a clear inference that the other sections of 760 Code Mass. Regs. §§ 6.00 do not apply to the voucher program.[15]

---

[15]The full text of 760 Code Mass. Regs. § 6.02 (2003), reads:

"(1) 760 [Code Mass. Regs. §§] 6.00 [(2003)] applies to all persons residing in state-aided public housing, known as c. 200 family housing, c. 667 elderly/handicapped housing and c. 705 family housing, except as otherwise provided and further provided that persons residing in housing units receiving federal Section 8 subsidy shall have their rents determined in accordance with applicable federal Section 8 regulations. 760 [Code Mass. Regs. §§] 6.00 also applies to those persons residing in state-aided public housing, known as c. 689 special needs housing, provided that the housing is under the direct management of [a local housing authority] and residents have individual leases with the [local housing authority]. 760 [Code Mass. Regs. §§] 6.07 [(1998)] applies only to residents in c. 667 elderly/handicapped housing.

"(2) 760 [Code Mass. Regs. §§] 6.05 [(2003)] and [760 Code Mass. Regs. §] 6.08 apply to participants in the Alternative Housing Voucher Program (AHVP). See 760 [Code Mass. Regs. §§] 53.00 [(1996)]. 760 [Code Mass. Regs. §] 6.08 applies to participants in the Massachusetts Rental Voucher Program (MRVP). See 760 [Code Mass. Regs. §§] 49.00 [(2012)]."

In the context of the entire section, the only sensible reading leads to the

Section 6.08 governs only the grievance procedure for voucher program tenants and, as such, is silent on the question of overnight guest occupancy.

At the grievance panel hearing, Torres variously testified that the relevant time period was either twenty-one days or fourteen days, stating initially that "[y]ou have 14 days to have someone live with you" and, later, that "[i]t's [S]tate voucher program. And I know for Section 8 is 14 days. I believe that for state it's like 21 days." Torres was unable to point to anywhere in the voucher or the corresponding voucher program regulations to support this assertion.

The regulations surrounding this issue are evidently not a model of clarity. Accordingly, we reject the Appeals Court's reasoning and conclude, at least as applied, that the regulations are impermissibly vague.

First, as discussed *supra*, the authority does not promulgate the voucher program regulations and is not entitled to deference in interpreting them.[16] Second, the voucher program regulations, 760 Code Mass. Regs. §§ 49.00, expressly incorporate by reference many of the definitions applicable to public housing programs generally, but not the twenty-one-day limit on guest occupancy. And, as noted, although 760 Code Mass. Regs. § 6.02 specifically dictates that the full array of occupancy requirements under 760 Code Mass. Regs. §§ 6.00 applies to a variety of State public housing programs, it explicitly states only that 760 Code Mass. Regs. § 6.08 applies to the voucher program. If the department wishes to carry over the guest limitation in its State public housing regulation to the voucher program, it should explicitly do so. In their current form, the department regulations fall short of informing a voucher program tenant when a guest becomes a household member that would trigger the tenant's duty to inform the authority, and accordingly, their application here requires reversal.[17]

conclusion that, of all the sections of 760 Code Mass. Regs. §§ 6.00, § 6.08 *and only* § 6.08 applies to the voucher program.

[16]One need only consider Torres's demonstrated lack of familiarity with the applicable regulations to show why, as a practical matter, deference is inappropriate here.

[17]We note that the terms of the voucher and the corresponding regulation

4. *Adequacy of grievance panel's decision.* Rivas challenges the adequacy of the panel's decision, claiming it did not contain subsidiary factual findings demonstrating that correct legal principles were applied. We agree that the factual findings were sufficient to give fair notice of the factual basis for the panel's decision. The regulations required the authority's grievance panel to issue a written decision "describing the factual situation" and ordering relief, if any relief is appropriate. See 760 Code Mass. Regs. § 6.08(4)(g). See also G. L. c. 30A, § 11 (8).[18] The grievance panel's notice of decision to Rivas stated:

> "The facts upon which the Grievance Panel made this decision are summarized as follows:
>
> "Failure to report changes in family composition and in family's income. Overwhelming evidence in support of this was presented at the hearing, as well as testimony and documentation submitted by [authority] staff from both the Leased Housing Department and Tenant Selection Department."

Although it is true that the grievance panel's broad statement, "[o]verwhelming evidence in support," does not specifically identify which evidence it found credible and which it did not, this is not a case where either Rivas or a reviewing court is "left without any guide to its reasons." *Leen* v. *Assessors of Boston*, 345 Mass. 494, 501-502 (1963) (agency stating its conclusion based on "all the evidence admitted," when record included 1,110 pages of testimony, did not comply with G. L. c. 30A, § 11 [8], because it left appellate court without any reasonable guidance). But see *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins.*, 408 Mass. 363, 374 (1990) (agency need not

pertaining to reporting changes in household composition and income, 760 Code Mass. Regs. § 49.05(8)(b) (2000), are only impermissibly vague as applied in this case. Certainly, if an individual moved into a voucher program unit with the intent to reside there indefinitely, that scenario would trigger the duty to report a change in household composition and income. On the other hand, hosting a simple overnight guest would clearly not trigger that duty.

[18]General Laws c. 30A, § 11 (8), states: "Every agency decision shall be in writing or stated in the record. The decision shall be accompanied by a statement of reasons for the decision, including determination of each issue of fact or law necessary to the decision . . . ."

make findings on every contested issue so long as decision permits effective appellate review). That said, the panel's findings were insufficient because they failed to make clear how the panel defined "household member," except for the bare assertion that Burgos fell within that definition. Critically, the findings do not state whether the panel found a violation because it believed Burgos was living with Rivas full time, or if it accepted that she was only living with Rivas two weeks per month but nevertheless considered that a violation.

5. *Ex parte communications.* Rivas's final claim of error stems from the ex parte manner in which Torres presented the authority's case against Rivas to the board. Specifically, Rivas argues that the conduct of the hearing before the board violated her right to cross-examine witnesses and submit rebuttal evidence under G. L. c. 30A, § 11 (3). However, G. L. c. 30A, § 10, states:

> "When a party has the opportunity to obtain an agency hearing, followed by one or more appeals before the same agency or before different agencies, such appeals being limited to the record made at the hearing, the appeal procedure need not comply with any requirement of this chapter for the conduct of adjudicatory proceedings except paragraphs (7) and (8) of section eleven."

Rivas contends that because she presented additional evidence at the board hearing, this exemption does not apply. However, Rivas has not established that Torres or McLaughlin provided any new evidence to the board, such as evidence of alleged gang involvement,[19] that would have triggered her right to testify or cross-examine witnesses under G. L. c. 30A, § 11 (3). Torres merely provided the board with the same package of documentary evidence she presented to the grievance panel, and answered general questions about the nature of the voucher program.

Rivas further contends that Torres's ex parte communication

---

[19]McLaughlin testified in his deposition that, on the day after the board hearing, after the board had made its decision, Torres mentioned to him: "[The Rivas family is] not the best family. There's a lot of gang activity and criminal activities there." Torres corroborated McLaughlin's account, but there was no indication that allegations of gang activity were ever presented to the board.

to the board violated her constitutional due process rights under *Matthews* v. *Eldridge*, 424 U.S. 319 (1976). Without a substantial risk of bias, however, having the same agency responsible for adjudication and enforcement does not offend due process. See *Kippenberger* v. *Board of Registration in Veterinary Med.*, 448 Mass. 1035, 1036 (2007) (due process not violated by ex parte communications between agency executive and adjudicative board prior to hearing); *Raymond* v. *Board of Registration in Med.*, 387 Mass. 708, 717 (1982) (due process not violated by agency's dual role unless "special circumstances in a particular case may demonstrate an unacceptable risk of unfairness"). Nothing in the record of this case indicates the ex parte communication created any unfairness.

For the reasons stated, the judgment of the Superior Court is reversed, and the matter is remanded in accordance with this opinion.

*So ordered.*